UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                   :

Luisa Calixto                               :   Index No.: _____
                                   :

                   Plaintiffs,     :       **COMPLAINT**
                                   :           **AND**
                                   :     **JURY DEMAND**

           – against –           :
                                   :

Balsamo & Rosenblatt, P.C.,             :
Robert Rosenblatt,                  :
Edward Hall,                         :
Serenay Taysin,                      :
266 Realty NY LLC,                  :
Heung Sang Tam, and                X
Justice McAllister
                    Defendants.
-------------------------------------------------------------------

      Plaintiff Luisa Calixto brings suit against a debt collection law firm, Balsamo &

Rosenblatt, P.C., and three attorneys at the firm, Robert Rosenblatt, Edward Hall, and Serenay

Taysin (collectively the "Collection Attorneys") for violating the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.,* N.Y. Jud. § 487, and for

committing negligence per se and gross negligence. Plaintiff also brings suit against putative

landlords, 266 Realty NY LLC and Heung Sang Tam, and the managing agent Justice Mcallister,

(collectively, the "Landlord") for rent overcharge, for violating N.Y. Gen. Bus. Law § 349 *et*

*seq.*, and for negligence per se and gross negligence.

      Ms. Calixto is a low income rent stabilized tenant who withheld about $7,500 in rent

from her landlord in an attempt to get long needed repairs done to her dilapidated apartment. In

response, the Landlord, through the Collection Attorneys, falsely claimed Ms. Calixto owed

more than $30,000 and sued on that amount, seeking eviction and a money judgment. Promptly

after receiving notice of the lawsuit, Ms. Calixto paid the money she was withholding and the landlord gave her receipts that it earmarked showing she was up to date. In spite of this, the Landlord and Collection Attorneys continued to vigorously litigate the lawsuit when they knew or should have known that Ms. Calixto never owed $30,000 and paid what was owed within days after being served with the Landlord Tenant Lawsuit (the "LT Suit"). Further, the Collection Attorneys and the Landlord regularly sue low income tenants such as Ms. Calixto for amounts they do not owe in an effort to force them out of their rent stabilized apartments. In addition, for years prior to the LT Suit through today, the Landlord has inflated Ms. Calixto's rent over what is permissible pursuant to the Rent Stabilization Law of 1969, Admin. Code § 26-501 *et seq* ("RSL"), and they are liable for that rent overcharge.

## JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Jurisdiction of the Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law under the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue is proper in this District because all or a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Kings County, NY.

## PARTIES

3.      Plaintiff Luisa Calixto ("Ms. Calixto" or "Plaintiff") is an individual who resides in Kings County, New York, specifically Apartment 3L at 266 Prospect Park West, Brooklyn, NY 11215 (the "Apartment Building.") Ms. Calixto was alleged to owe rent for the apartment in which she and her family live. Ms. Calixto is a consumer as defined by 15 U.S.C. §1692a(3) because the putative residential rent is "debt" as defined in 15 U.S.C. § 1692a(5).

4.      Defendant Balsamo & Rosenblatt, P.C. ("the P.C."), a debt collection law firm, is a domestic corporation with its principal place of business in Brooklyn, NY.1

5.      The P.C. is a "debt collector[s]" as defined in 15 U.S.C. §1692a(6) as it, through its attorneys, including Defendants Robert Rosenblatt and Edward Hall, regularly collect or attempt to collect, directly or indirectly, debts owed, or due or asserted to be due another, and that is its principal purpose. The P.C. files hundreds of collection lawsuits, and sends out hundreds of collection letters, seeking to collect putative rent from consumers. Many of the petitions and motions in the collection lawsuits are executed by Defendants Robert Rosenblatt and Edward Hall.

6.      Defendant Robert Rosenblatt is a named partner at the P.C. Upon information and belief, Mr. Rosenblatt is the principal of the P.C. and personally performed or oversaw most of the acts and omissions that give rise to the claims in this action. Mr. Rosenblatt also personally signed and

---

1 In the landlord tenant lawsuit filed by 266 Realty NY LLC against Ms. Calixto the name of the firm for the petitioner is Balsamo & Rosenblatt, P.C. (the "P.C."). However the website for the New York Secretary of State lists the status of the P.C, as "INACTIVE - Dissolution by Proclamation / Annulment of Authority (Apr 29, 2009)." The caselaw is clear that the P.C. may still be sued in this action.

However, "it is well settled that statutory dissolution by proclamation ... is intended to encourage voluntary payment of franchise taxes. A dissolved corporation may sue or be sued ... and process may be served by or upon it." *Estate of Essig v. 5670 58 Street Holding Corp.,* 836 N.Y.S.2d 492 (N.Y.Supp.Ct.2007) (internal quotation marks and citation omitted).

*Kulwa v. Obiakor OB/GYN P.C.*, No. 12-CV-1868 JG MDG, 2013 WL 504383, at *5 (E.D.N.Y. Feb. 8, 2013)

In the alternative, the absence of the P.C. strengthens the claims of direct personal liability for the individual attorney defendants in this action,  Robert Rosenblatt, Edward Hall, and Serenay Taysin.

verified the Non-payment Petition, contending that the amounts sought to be collected were correct. On information and belief, Mr. Rosenblatt regularly signs filings in lawsuits seeking to collect putative rent from consumers, and takes other actions in relation to lawsuits seeking to collect putative debts from consumers, and, on information and belief, that is his principal purpose at the P.C. Therefore Mr. Rosenblatt is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7.      Defendant Edward Hall is an attorney at the P.C. He executed the Affirmation in Opposition to Ms. Calixto's Motion to Dismiss despite the fact that Ms. Calixto did not owe any of the amounts sought to be collected. On information and belief, Mr. Hall regularly signs filings in lawsuits seeking to collect putative rent against consumers and engages in other acts to collect putative rent against consumers, and on information and belief, that is his principal purpose at the P.C. Therefore Mr. Hall is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8.      Defendant Serenay Taysin is a partner at the P.C. Ms. Taysin regularly appeared in housing court on behalf of the Landlord and engages in other acts to collect putative rent against consumers, and on information and belief, that is her principal purpose at the P.C. Therefore Ms. Taysin is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.      Collectively the P.C., Mr. Rosenblatt, Mr. Hall, and Ms. Taysin are the "Collection Attorneys."

10.     Defendant 266 Realty NY LLC ("266 LLC") is a domestic limited liability company.

11.     266 LLC was the petitioner in the collection lawsuit against Ms. Calixto, and alleged in that suit that it was the landlord of the Apartment Building. 266 LLC has filed previous rent collection lawsuits contending it is the landlord of the Apartment Building entitled to sue in its own name for alleged rent.

12.     Mr. Heung Sang Tam is an individual who, on information and belief, is a resident of

4

New York.

13.     Mr. Tam also contends he is the landlord for the Apartment Building. Mr. Tam has filed a rent collection lawsuit contending he is the landlord of the Apartment Building and is entitled to sue in his own name for the rent. *See Heung Sang Tam v. Arturo Solis*, Index Number LT-62974/17. In addition, Mr. Tam has registered himself with the New York City Department of Housing Preservation & Development ("HPD") as the owner of the Apartment Building. *See* Exhibit A (HPD listing for the Apartment Building). Ms. Calixto paid her rent directly to Mr. Tam and dealt directly with Mr. Tam during her tenancy. Upon information and belief, Mr. Tam is a member of 266 LLC. On the transfer of the deed from Mr. Tam to 266 LLC, Mr. Tam signed as both the buyer and the seller. *See* Exhibit B.

14.     Further, the Collection Attorneys have represented 266 LLC and Mr. Tam in different lawsuits where both Mr. Tam and 266 LLC each claims to be the landlord for the Apartment Building.

15.     Defendant Justice Mcallister is the managing agent of the Apartment Building. Mr. Mcallister is listed as the "registered managing agent" on the collection lawsuit against Ms. Calixto. Mr. Mcallister personally took part in the initial court conference in the lawsuit against Ms. Calixto as the representative for 266 LLC. The court attorney at the initial conference challenged Mr. Mcallister to explain why Ms. Calixto was being sued for over $30,000 when she had come to court with a stack of rent receipts showing her rent had been paid. Mr. Mcallister had no explanation for the court attorney, and yet the collection lawsuit for the full alleged amount continued to be vigorously litigated for several more months. Mr. Mcallister is listed as the managing agent in rent collection lawsuits filed by Mr. Tam. Mr. Mcallister is also registered with HPD as the managing agent for the Apartment Building.

16.     Mr. Mcallister was operating as the agent for the owner of the Apartment Building in connection with the rent collection activities against Ms. Calixto, and was operating within the course and scope of that agency.

17.     266 LLC, Mr. Tam, and Mr. Mcallister are jointly identified in this action as the "Landlord," and are jointly and severally liable for the attempts to collect the putative rent from Ms. Calixto when little to no money was owed. On information and belief, Mr. Tam and Mr. Mcallister are members of 266 LLC.

18.     The Collection Attorneys were operating as the agents of the Landlord, and within the course and scope of that agency, in making a payment demand, filing the collection lawsuit, and vigorously pursuing for many months the rent collection lawsuit against Ms. Calixto even though it was clear she did not owe the alleged debt. Therefore, the Landlord is vicariously liable for the conduct of the Collection Attorneys and directly liable for their own misconduct.


## FACTUAL ALLEGATIONS

19.     Ms. Calixto resides in apartment 3L, a two bedroom apartment at 266 Prospect Park West, Brooklyn, NY 11215 (the Apartment Building). Ms. Calixto is a low income Spanish speaking New Yorker who resides in the two bedroom apartment with her children and grandchildren.

20.     Upon information and belief, 266 Prospect Park West was built in 1935 and is a four-story building with eight residential units and two retail units.

21.     Ms. Calixto has lived in her apartment since the summer of 1997. When she first moved in, she recalls paying her landlord, Mr. Heung Tam, $750.00 per month.

22.     Mr. Tam never gave Ms. Calixto a written lease for the apartment and never informed her that the apartment was rent stabilized.

23.     From 1997 through September 2017, Ms. Calixto paid her rent in cash. Mr. Tam gave her rent receipts and filled out all of the information on these receipts, including the date and the month(s) for which the rent payment was applied.

24.     Ms. Calixto's rent payments increased over the years. Upon information and belief, Ms. Calixto's rent payment increased to $1,095.00 per month beginning in or around April 2011.

25.     Upon information and belief, in or around January 2014, Ms. Calixto's rent decreased to $1,075.00 per month.

26.     Over the course of the more than 20 years that Ms. Calixto has lived in her apartment, there were serious problems with the apartment that the landlord would not repair. For example, when she first moved in, there was damage from a previous fire in the building. Her wood floors were so damaged that her brother had to install new flooring in one of the bedrooms and in the living room. Around 2014, her stove was rusting and the pilot light would not work. But when Ms. Calixto told Mr. Tam about the problem, he said that if she wanted it fixed, her rent would increase. Ms. Calixto wound up dealing with it herself and paid $400.00 to purchase a new stove and have it installed. Additional issues have included the following: a leaking bathroom ceiling, mold in the bathroom, a window that slams shut when she tries to open it, doors that are broken with wood that is thin and disintegrating, and a missing carbon monoxide detector and smoke alarm. Most recently, earlier this year, Ms. Calixto's developmentally disabled son fell down the stairs in the building and fractured his wrist when he tripped over nails that were protruding from the steps. Also this year, Ms. Calixto's four-year old daughter tested positive for elevated lead levels.

27.     Over the years, Ms. Calixto, who speaks Spanish, frequently asked her brother to translate and inform Mr. Tam of the conditions in her apartment. But Mr. Tam failed to make any of the requested repairs.

28.     Frustrated by Mr. Tam's refusal to make repairs, around March 2017, Ms. Calixto called 311 for the first time to report the problems in her apartment. She also began to withhold her $1,075.00 per month rent payments. Ms. Calixto saved the money she should have been paying in rent every month and put it to the side, knowing that she would give Mr. Tam this money as soon as the necessary repairs were made.

29.     In a Five Day Notice dated August 21, 2017, the Collection Attorneys notified Ms. Calixto that she was indebted to her landlord in the amount of $30,100.00. This amount allegedly represented rent owed from May 2015 through August 2017 at an amount of $1,075.00 per month. The notice advised Ms. Calixto that if she did not pay $30,100.00 on or before September 2, 2017, the landlord would commence summary proceedings to recover possession of the apartment. *See* Exhibit C.

30.     On or around September 13, 2017, the Landlord, through the Collection Attorneys, filed a nonpayment proceeding against Ms. Calixto in Kings County Housing Court captioned *266 Realty NY LLC v. Luisa Calixto*, Index Number 84971/17 (the "LT Action"). The Notice of Petition and Petition both alleged that $31,175.00 remained due, representing rent owed from May 2015 through September 2017. *See* Exhibit D.

31.     Notably, paragraph 7 of 266 LLC's Petition stated that "[t]he premises are subject to the Rent Stabilization Law of 1969 as amended and have been duly registered with the New York State Division of Housing and Community Renewal – DHCR – and the rent demanded herein does not exceed the registered rent and does not exceed the Lawful Rent Stabilization Rent. The premises are a multiple dwelling. Registration Number: 332283." *See* Exhibit D.

32.     Ms. Calixto was confused and startled to see that 266 LLC was seeking to collect $31,175.00 because she had only withheld seven months of payments. On or around September 23,

2017, Ms. Calixto promptly tendered to Mr. Tam $7,525.00, an amount representing all of the rent she had withheld from March 2017 through September 2017. *See* Exhibit E. After tendering this money, Ms. Calixto became current on her rent and did not owe Mr. Tam any additional money.

33.     When Ms. Calixto tendered this money, Mr. Tam gave her receipts that he filled out showing that her rent was paid through September 2017.

34.     Despite the fact that Ms. Calixto did not owe any additional back rent, Defendants proceeded with the litigation. On October 10, 2017, Ms. Calixto appeared *pro se* for her first court appearance in the LT Action. Upon information and belief, Mr. Justice Mcallister, who lives in the basement of Ms. Calixto's building and serves as the managing agent for the property, appeared on behalf of 266 LLC. Mr. Mcallister was asked why the landlord was suing for so much money. Mr. Mcallister said he would speak with Mr. Tam and he made copies of the receipts showing Ms. Calixto's payment of the rent from March 2017 through September 2017. Pursuant to a stipulation signed in court, the case was adjourned to November 21, 2017 to give the parties time to review the rent records for the apartment. Petitioner also promised to make certain repairs. *See* Exhibit F.

35.     In October 2017, Ms. Calixto retained CAMBA Legal Services, a non-profit legal services provider, to represent her in the LT Action.

36.     On November 21, 2017, Ms. Calixto appeared in housing court with her attorney from CAMBA Legal Services. However, in spite of the judge's instructions on the previous court date, neither the landlord nor the attorney had reviewed the rent records. As a result, the case was again adjourned, this time to January 4, 2018. *See* Exhibit G.

37.     Due to a snowstorm, the January 4, 2018 court date was adjourned to February 22, 2018.

38.     On or around January 31, 2018, Ms. Calixto's housing attorney sent the Collection Attorneys a letter attaching copies of Ms. Calixto's rent receipts documenting that the rent Ms.

9

Calixto had been withholding was paid, and asking them to discontinue the LT Suit. *See* Exhibit H. The Collection Attorneys ignored the letter, and the evidence attached thereto.

39.     On or around January 31, 2018, Ms. Calixto's housing attorney also subpoenaed records regarding Ms. Calixto's apartment building from the New York State Division of Housing and Community Renewal ("DHCR"). *See* Exhibit I.

40.     In response to this subpoena, DHCR issued documents stating that no record of a Registration Statement was on file with DHCR from 1984 until the present and that a Maximum Base Rent ("MBR") was never established for the building. *See* Exhibit J.

41.     At some point during the course of the proceeding, the Collection Attorneys provided Ms. Calixto's housing attorney with a rental breakdown. However, the breakdown incorrectly alleged that Ms. Calixto had not paid any rent from May 2015 through August 2017, despite the fact that Ms. Calixto has in her possession rent receipts for payments made during that period.

42.     In motion papers dated February 13, 2018, Ms. Calixto's attorney moved to dismiss the case on the grounds that the rent demand and petition were defective in that they failed to credit Ms. Calixto for money already paid, and because 266 LLC had failed to register the apartment with the New York City Department of Housing Preservation and Development ("HPD") and was charging an amount above the legal rent. *See* Exhibit K.

43.     On the motion's return date on February 22, 2018, the matter was adjourned to April 2, 2018 to give the Landlord an opportunity to serve opposition. *See* Exhibit L.

44.     On March 20, 2018 Defendant Serenay Taysin asked Ms. Calixto's counsel via email if they could enter into a stipulation to discontinue the case. *See* Exhibit M.

45.     Despite their representation that they would discontinue the action, on March 20, 2018, the Collection Attorneys in fact served an Affirmation in Opposition. Defendant Edward Hall, an

attorney at the P.C., executed the affirmation. The Affirmation in Opposition falsely represented that "there are no defects in the Petitioner's rent demand, as such is a good faith estimate of the amounts due at the commencement of this proceeding." Notably, the Opposition did not attach any rent records, did not address the fact that Ms. Calixto paid $7,525.00 at the very beginning of the LT Suit, did not substantively address the proof attached to Ms. Calixto's motion showing that the apartment was not registered with DHCR, and did not include an affidavit by someone with personal knowledge addressing the amount allegedly owed. See Exhibit N.

46.     Confused as to why the Collection Attorneys would write opposition if they were going to discontinue the case, Ms. Calixto's housing attorney reached out to Defendant Serenay Taysin to ask if the parties were still planning to discontinue. Ms. Taysin contended that they were going to discontinue the action, but that their client still wanted them to proceed with the opposition. *See* Exhibit M.

47.      The Collection Attorneys did not discontinue the action, but instead filed opposition to Ms. Calixto's motion to dismiss. Prior to oral argument on the motion, Defendant Edward Hall said that his client was insisting that the Collection Attorneys oppose Ms. Calixto's motion. During oral argument, Defendant Serenay Taysin contended that Ms. Calixto's rent receipts were an issue for trial and that the case should not be discontinued because the Landlord would eventually register the apartment and they would just wind up back in court. When the judge asked Ms. Taysin why the apartment was not already registered, Ms. Taysin did not have an answer. The judge reserved decision to read the parties' papers.

48.     On April 2, 2018, Judge Cheryl Gonzales granted Ms. Calixto's motion and dismissed the action. The court held that Multiple Dwelling Law § 325 "precludes the collection of rent if the building is not registered" and that 266 LLC "cannot seek more than the registered rent, which at

this point is zero." *See* Exhibit O.

49.     Despite the fact that the building was never registered, Ms. Calixto continues to pay Mr. Tam $1,075.00 per month.

> ***The Landlord and Collection Attorneys' scheme to force out low income tenants.***

50.     The misrepresentations by the Landlord and the Collection Attorneys to consumers and the courts as to the amount due are not unique to this case, but are a regular course of conduct in their businesses.

51.     Heung Tam, also known as Heung Sang Tam, and Heung S. Tam, is the owner of Ms. Calixto's building, 266 Prospect Park West, Brooklyn, NY 11215. In addition to this building, Mr. Tam owns five other buildings in the neighborhood. These buildings are 263 Prospect Park West, Brooklyn, NY 11215, 268 Prospect Park West, Brooklyn, NY 11215, 270 Prospect Park West, Brooklyn, NY 11215, 271 Prospect Park West, Brooklyn, NY 11215, and 272 Prospect Park West, Brooklyn, NY 11215. Upon information and belief, these buildings are all rent stabilized and all have between six and eight residential units.

52.     All of these buildings have a related corporate entity named for the building and each entity is named using the same pattern. For example, 266 Prospect Park West is 266 Realty NY LLC, 272 Prospect Park West is 272 Realty NY LLC, and so on.

53.     Mr. Tam's buildings all seem to have serious persistent repair issues. Since 2012, Mr. Tam or a related LLC for one of his buildings has been sued 14 times by the New York City Department of Housing Preservation and Development to force Mr. Tam to make repairs to his buildings. This includes a lawsuit filed this year to force Mr. Tam to make repairs to Ms. Calixto's building. *DHPD v. 266 Realty,* Index No. LT-0644/18.

54.     Mr. Tam hires the Collection Attorneys to file bogus residential landlord tenant cases

seeking to evict his tenants for non-payment of rent. Sometimes these cases are filed with Mr. Tam as the petitioner, sometimes the LLC is the petitioner, and sometimes Mr. Tam and Paret Tam are listed as the petitioners. There is seemingly no rhyme or reason to who is listed as the petitioner, and a tenant can be sued by Mr. Tam and the LLC within even the same year. However, in all instances the Collections Attorneys represent the petitioner. In all instances except one McAllister is the managing agent.[2] McAllister is listed as the managing agent for every building on HPD's website.

55.     CAMBA Legal Services has attempted to review every residential landlord tenant case based on the non-payment of rent filed on behalf of Mr. Tam or one of his LLCs since 2016. The review was done by searching the computer database located in the Brooklyn courthouse. For this reason, if the name of an entity was misspelled when it was entered into the database by the clerk it would not have appeared in our search. Otherwise, the search should include a complete record of all cases filed.

56.     In total, 13 lawsuits against 7 tenants were discovered, not including Ms. Calixto's. Balsamo & Rosenblatt, P.C. was the attorney for all of these cases and all of the cases have the same disturbing fact pattern: a tenant is sued for tens of thousands of dollars in alleged unpaid rent. The claim for rent goes back at least one year, meaning that at least part of the amount is barred by laches, a common defense in Housing Court where money judgments for possession are generally limited to the last year to six months.

57.     Almost all of the cases involve a similar pattern: the tenant disputes the amount claimed. After a few court dates, the case is eventually discontinued without prejudice with no evidence of money being paid. Often, a few months later, Mr. Tam will refile the case, this time asking for

---

2 Even in that one instance, Heung Sang Tam is the managing agent.

the same arrears as before plus additional money. Upon information and belief, Mr. Tam and the Collection Attorneys believe that if they sue unsophisticated low income tenants for large amounts enough times, eventually the tenants will give up and move out and Mr. Tam will be able to rent the apartment for more money. The cases bear this out, as at least two tenants seem to have left in the face of another lawsuit.

58.     Simply put, Mr. Tam and the Collection Attorneys are lying to the court and to tenants about rent being owed in order to wear them down and intimidate them into moving out of their rent stabilized apartments. The best illustrations of these practices are the cases themselves and the tenants affected by Defendants' conduct, as discussed in detail in the following subsections.

***Viola Pastor***

59.     Viola Pastor was a resident of 263 Prospect Park West. In February of 2015, a fire destroyed the building and displaced the tenants. Christina Carrega-Woodby, *Judge Orders Brooklyn Landlord to Fix Building Damaged in Fire*, New York Daily News, May 11, 2016, http://www.nydailynews.com/new-york/brooklyn/judge-orders-brooklyn-landlord-fix-building-damaged-fire-article-1.2633782. The tenants remained out of possession until at least May 2016. *Id.* In May of 2016, Ms. Pastor was sued in *263 Realty LLC v. Viola Pastor*, Index No. LT-069838/16, for $40,625.00 for rent from May 2014 through May 2016. In other words, Mr. Tam and the Collection Attorneys sued Ms. Pastor for rental arrears for an apartment that was destroyed in a fire and that was uninhabitable. This is improper. When a fire occurs a tenant is no longer responsible for the rent. Around the same time that Mr. Tam brought suit against Ms. Pastor, Ms. Pastor was suing Mr. Tam in an HP proceeding to force the landlord to repair the burned building.

60.     Ms. Pastor did not initially appear in the landlord tenant case. This is unsurprising, considering Mr. Tam allegedly served the five day notice and petition at Ms. Pastor's burned out

apartment, even though the apartment was not livable at the time. As a result, Mr. Tam succeeded in getting a possessory judgment against Ms. Pastor. Once Ms. Pastor finally learned of the suit against her, she appeared in the proceeding. On this appearance date, the judgment against Ms. Pastor was vacated and the action was discontinued without prejudice.

*Elia Sosa*

61.    Ms. Sosa has been sued by Mr. Tam and the Collection Attorneys three times since 2016. For most of her tenancy, Ms. Sosa never owed Mr. Tam any money, even though Mr. Tam has falsely claimed she has. Mr. Tam will not accept checks or money orders from Ms. Sosa, forcing her to pay with cash, and making it harder to prove she actually paid her rent. When Ms. Sosa insisted Mr. Tam accept a money order for rent, he refused and rejected her tender of rent. Because of Mr. Tam's refusal to accept rent, Ms. Sosa has incurred some arrears, though far less than claimed, and upon information and belief, she has most or all of any money owed in escrow.

62.    Ms. Sosa was sued in March of 2016 in *Heung Sang Tam and Paret Tam v. Elica Sosa*, Index No. LT-62438/16. In this action Mr. Tam alleged Ms. Sosa owed $25,104 for rent from August 2013 through September 2015. Ms. Sosa never appeared in the action and the Landlord and the Collection Attorneys took too long to apply for a warrant so no eviction was possible.

63.    Ms. Sosa was sued again in February of 2017 in *Heung Sang Tam and Paret Tam v. Elica Sosa*, Index No. LT-57459/17. In this action, Mr. Tam and the Collection Attorneys sued Ms. Sosa for $29,120 for rent from October 2014 through February 2017 (excluding only June 2016). Ms. Sosa appeared with an attorney from Brooklyn Legal Services ("BLS"), who filed an amended answer. On the first court date the matter was adjourned and Mr. Tam and the Collection Attorneys were directed to provide a rental breakdown to Ms. Sosa's attorney. On the next court date, May 23, 2017, the case was discontinued without prejudice.

64.     Mr. Tam sued Ms. Sosa yet again in November 2017, in *272 Realty NY LLC v. Elica Sosa*, Index No. LT-92124/17. This time, Mr. Tam sought $32,426 for rent owed from May 2015 through November 2017. Brooklyn Legal Services again appeared on Ms. Sosa's behalf and filed an answer asserting that the only money that Ms. Sosa owes is the money that the landlord refused when she tendered it to him. Ms. Sosa's attorney also asserted a counterclaim for harassment, alleging that petitioner had engaged in acts, including the commencement of baseless and frivolous litigation, aimed at causing Ms. Sosa to vacate her apartment. This action has been adjourned numerous times, with the last adjourn date given so that the Collections Attorneys can file a motion to withdraw as counsel.

***Rafaela Lucero***

65.     In *Heung Sang Tam and Paret Tam v. Rafaela Lucrio*, Index No. LT-57460/17, Mr. Tam and the Collection Attorneys sued Ms. Lucero, a resident of 272 Prospect Park West, for $33,000 for rent from May 2015 through February 2017. Ms. Lucero made an appointment with Brooklyn Legal Services ("BLS"), who agreed to represent her. BLS attempted to file an answer in late April, but a default judgment and warrant of eviction had already been entered. BLS moved to vacate the default judgment and interpose an answer. This request was granted and the case was restored to the calendar and a new court date was scheduled for June 14, 2017. On that date, like in so many other cases, Mr. Tam and the Collection Attorneys discontinued the proceeding.

66.     Ms. Lucero was sued again in September 2017 in *272 Realty NY LLC v. Rafael Lucrio*, Index No. LT-84972/17. In this action, Ms. Lucero was sued for $51,000 for rent from December 2014 through September 2017. Ms. Lucero again received assistance from BLS, who after several court appearances and attempts to resolve this matter, moved to dismiss. The motion noted that the apartment was not registered with DHCR and attached a proposed amended

answer asserting a rent overcharge claim and harrassment. This motion was granted on the basis that Ms. Lucero was not served and the description of the premises was incorrect. The case is currently active only to the extent of determining Ms. Lucero's attorneys' fees and for the Collection Attorneys to move to withdraw as counsel.

67.    Based on a conversation with Ms. Lucero's counsel, Ms. Lucero has been charged an illegal rent for a number of years. As a result, Ms. Lucero has been putting her rent into escrow. Rather than engage Ms. Lucero and determine the legal amount owed, Mr. Tam and the Collection Attorneys simply filed and discontinued non-payment proceedings.

**_Dionel Calixto_**

68.    In March 2016, Dionel Calixto, who has no relation to the Plaintiff, was sued in _Heung Tam v. Dionel Calixto_, Index No. LT-62437/16, for $16,198.00 in rent from August 2014 through September 2015. It is not clear if Ms. Calixto was ever served and she never appeared in the action. The Collection Attorneys did not timely move for a default judgment so no warrant of eviction was ever issued.

69.    In March 2017, Dionel Calixto was sued again in _Heung Tam v. Dionel Calixto_, Index No. LT-60240/17, this time for $37,024 for rent from August 2014 through March 2017. Dionel Calixto never appeared in this action and a warrant of eviction was eventually issued.

70.    **_Arturo Solis_**

71.    In _Heung Sang Tam v. Arturo Solis_, Index Number LT-62974/17, Mr. Solis, a resident of 266 Prospect Park West, was sued in March of 2017 for $23,240 in alleged rent from July 2015 through October 2016. Mr. Solis was never served with the Petition and did not know about the case. Mr. Solis did not learn about the case until the marshal came to his door and removed him from his apartment. Mr. Solis then filed a post-eviction order to show cause to vacate the

17

judgment. This order to show cause states that he did not owe the landlord any money and he did not receive anything from the landlord about the suit. On July 6, 2017, the return date for the order to show cause, a stipulation was entered in which Mr. Solis was returned to possession, the judgment was vacated and the case was discontinued without prejudice. This result is very unusual. Post-eviction orders to show cause are not easily granted because courts are reluctant to undo evictions. Moreover, when post-eviction orders to show are granted and money was owed, courts almost universally award landlords their costs and attorney's fees. That that was not done here, combined with the immediate dismissal of the action, reinforces Mr. Solis' claim that he did not owe any money to the landlord.

72.     Even though Mr. Solis was restored to his apartment, Mr. Solis was sued again in November 2017. In *266 Realty NY LLC v. Arturo Solis D.*, Index Number LT-93960/17, petitioner alleged Mr. Solis owed $52,560.00 for rent from December 2014 through November 2017. It is not clear how Mr. Solis could owe approximately $30,000 more than he allegedly owed in the last proceeding or why Mr. Tam and the Collection Attorneys consented to allowing Mr. Solis to re-enter the apartment and discontinue the prior action if he owed such an enormous sum.  Mr. Solis never appeared in the proceeding and a warrant of eviction was issued.

**Frank Vazquez**

73.     In *Heung Sang Tam v. Frank Vazqug; Frank Vazaez,* Index No. LT-060239/17,  the Collection Attorneys and Mr. Tam sued "Frank Vazqug or Frank Vazaez" a resident of 271 Prospect Park West, in March of 2017 for $21,189, representing rent allegedly owed from July 2015 through March 2017. The tenant, actually named Frank Vazquez, appeared *pro se* and checked off the box on the *pro se* answer form that "[t]he rent, or a part of the rent, has already been paid to the Petitioner." Mr. Vazquez appears to have significant health issues and on May

12, 2017, the court noted on the court file that a referral was made on Mr. Vazquez's behalf to Adult Protective Services. The case did not settle and was eventually sent to the Housing Court's trial part. The notes on the transfer to the trial part state that Mr. Vazquez believes he is entitled to a rent credit. On the trial date, September 7, 2017, instead of trying to get a judgment for all or part of the $21,189 that they claimed was owed, the case was discontinued at Mr. Tam's request.

74.      Six days later, on September 13, 2017, the Collection Attorneys signed a new petition against Mr. Vazquez in *271 Realty NY LLC v. Frank Vaqquz*, Index No. LT-84970/17, this time seeking rent from October 2015 through September 2017 totaling $24,216.00. It is not clear why Mr. Tam and the Collection Attorneys chose to file a new lawsuit when they could have just proven their case six days earlier and gotten a judgment. Mr. Vazquez attempted to defend himself again, but defaulted numerous times due to doctor's appointments and medical issues. The Collection Attorneys attempted to get a warrant of eviction against Mr. Vazquez but did not submit the proper paperwork to the judge to obtain a judgment so the request was rejected.  The Collection Attorneys did not take any steps to resubmit paperwork to the judge, suggesting Mr. Vazquez simply moved out.

*Elvira Uraga*

75.      Ms. Uraga's case is the only action reviewed in which money was paid. . But, like the other cases, Ms. Uraga was initially sued for tens of thousands of dollars far in excess of her legitimate debt. When landlords sue for grossly inflated amounts it has an especially harmful effect. The initial step to commencing any residential non-payment case is to send a five day demand notice setting out the rent due. This is often sent out by the landlord's attorney who makes clear the communication is from a lawyer. People believe that lawyers are honest, we have special ethical rules that govern our profession, and can lose our licenses if we lie to people.

When tenants see a five day notice from a lawyer saying that they owe $30,000 they often believe it, and with no hope of gathering that much money, tenants simply move our rather than fight. This is true even for tenants like Ms. Calixto or Ms. Uraga, who owed part of the money claimed. Getting a letter saying you need to pay the $7,000 you have saved in escrow is far different than getting one that says you owe $30,000 - one a low income tenant can pay, the other he or she cannot. And this is what Mr. Tam and the Collection Attorneys are banking on, that eventually the stress of court and the high dollar amount claimed wears on tenants and they simply give up and leave.

76.    Ms. Uraga was sued in May 2016 in *270 Realty LLC v. Elvira Vraga*, Index Number LT-69844/16 for $29,295 for rent from September 2013 through March 2016. At the time of the suit, Ms. Uraga had lived in the apartment for 25 years and was living in the apartment with her 20 year old autistic son, for whom she was the sole caretaker. Ms. Uraga would pay her landlord directly and he would give her receipts. Ms. Uraga noticed that these receipts were not dated properly but the Landlord told her not to worry about it. In fact, Mr. Tam was earmarking checks for months from almost two years prior that were previously paid by Ms. Uraga and for months in which public assistance had already paid part of Ms. Uraga's rent. The case was adjourned numerous times with Ms. Uraga tendering currently owed rent through the court proceeding. In March of 2017, Ms. Uraga and Mr. Tam agreed that only $9,511 was owed, about $20,000 less than originally claimed. Ms. Uraga pays this outstanding balance on May 2, 2017 and the case is discontinued with prejudice.

77.    Upon information and belief, Mr. Tam and the Collection Attorneys know or have reason to be aware of the defects in their notices and petitions. The law firm fails to conduct a meaningful attorney review of the documents that would support collection of the amounts alleged. For

example, if the Collection Attorneys properly sought out and reviewed rent ledgers, DHCR records, and leases, these mistakes simply would not occur.  Alternatively, the Collection Attorneys realized or consciously disregarded that the amount sought in the collection lawsuits were incorrect, but yet continued to file the suits.

78.     In Ms. Calixto's case, Defendants knowingly brought a lawsuit for significantly more than the amount that was due and more than the amount to which they were legally allowed to collect. Defendants made the conscious decision to continue the litigation for more than six months after all of the rent was paid and after they were on notice that they had no basis for continuing the litigation. Defendant Serenay Taysin's March 20, 2017 email offering to discontinue the case, along with Defendant Edward Hall's comment that the Landlord was insisting that they oppose Ms. Calixto's motion to dismiss, serve as a direct acknowledgement that there was no basis for the lawsuit – or at the very least for continuing with the lawsuit – and yet Defendants proceeded with filing opposition papers regardless.

79.     Defendants' misrepresentations are deceptive to any consumer – least sophisticated or otherwise – because the Landlord and the Collection Attorneys file documents and allege in court that significantly more money than is owed remains due.

80.     Ms. Calixto is precisely the type of vulnerable consumer the FDCPA was designed to protect. Her life has been severely affected by Defendants' actions. Defendants' conduct caused Ms. Calixto to sustain actual damages including out-of-pocket expenses to investigate her case and travel back and forth to Kings Housing Court, and meetings and consultations with attorneys.

81.     Moreover, the mental anguish and stress Ms. Calixto has experienced as a result of this lawsuit has plagued her for almost one year and continues to this day.

82.     When Ms. Calixto first received the petition she could not understand why she was being

sued for $31,175.00 when she had only withheld rent for approximately seven months. She was extremely stressed by the amount Defendants were seeking to collect and she worried constantly that she and her children would be evicted and become homeless. Ms. Calixto worried every day that a marshal might come and physically remove her and her family from the apartment and into the street. This fear led Ms. Calixto to suffer from severe sleeping problems. Most nights, she would lie awake, thinking about what would happen if her and her family had to leave and where they would go. She cried frequently throughout the duration of her court case. And while she tried her best to hide her stress and fear from her children, they were understandably effected by the situation. Her children would ask her where they would go if they were evicted and what would happen.  Ms. Calixto told her children that the family would probably have to live in homeless shelter. Her children were scared, did not know what to think, and were worried about how they would be able to return to school if they had to live in a shelter.

83.     Ms. Calixto's worries, distress, and sleeping problems persisted long after she tendered to Mr. Tam the rent payments she had been withholding. Defendants continued to litigate the case for more than six months and continued to allege she owed money dating back to May 2015. And even though she knew she did not owe this money, she was concerned that her landlord would somehow win the case.

84.     Mr. Tam told  Ms. Calixto that he had good lawyers, and Ms. Calixto was afraid he would win in court even though she did not owe the money. When Ms. Calixto went to housing court, she noticed that it was not the same attorney appearing for Mr. Tam at every hearing. She knew Mr. Tam owned several buildings in the area and she worried that because he had money and several good attorneys, that he would somehow win the case and her and her family would be left without a place to live.

85.     Although the LT Action has ended, Ms. Calixto still sometimes has difficulty sleeping when she thinks about the stress of everything that has happened with her apartment.

86.     Plaintiff also claims as actual damages the reasonable value of her attorneys' time and labor to investigate the case and obtain a favorable resolution.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AS TO THE COLLECTION ATTORNEYS)**

87.     Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this Complaint as if fully set forth herein.

88.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

89.     Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are

assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

90.　　The actions of Defendants enumerated above constitute attempts to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

91.　　Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Defendants also engaged in unfair or unconscionable litigation in violation of 15 U.S.C. § 1692f by unduly prolonging the legal proceedings in bad faith and requiring Plaintiff to appear at unnecessary hearings. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017).

92.　　As a result of these violations, the Collection Attorneys are liable to Ms. Calixto for her actual damages, statutory damages, and costs and attorneys' fees.

## SECOND CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*
## (AS TO ALL DEFENDANTS)

93.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

94.     New York General Business Law §349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

95.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

96.     As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their business that have broad impacts on consumers at large. This includes a pattern and practice of attempting to evict tenants by misrepresenting the amount owed and the legal regulated rent and actively concealing from the consumer and the courts the amount that has already been paid. Upon information and belief, Defendants engage in this pattern and practice because it is profitable and leads tenants to vacate their apartments.

97.     The Collection Attorneys were acting as the agent of the Landlord in seeking to collect the putative rent arrears, and was acting within the course and scope of that agency.

98.     For these reasons and for the other reasons stated in the statement of facts, Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere

carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damages award. Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

99.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Ms. Calixto suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**JUDICIARY LAW § 487**
**(AS TO THE COLLECTION ATTORNEYS)**

100.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

101.    New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who, *inter alia*, "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

102.    The Collection Attorneys violated § 487 by, *inter alia*, filing, serving, and continuing to vigorously litigate the LT Suit that misrepresented the amount owed and failed to credit Ms. Calixto for amounts already paid (she had paid the entire amount due within days of being served the LT Suit); falsely alleging in its petition that the premises were registered with DHCR and that the rent demanded did not exceed the legal regulated rent; and proceeding with litigation for more than six months despite knowing that they were not entitled to the amount sought.

103.    Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by the Collection Attorneys.

## FOURTH CLAIM FOR RELIEF
## RENT OVERCHARGE
## (AS TO THE LANDLORD DEFENDANTS)

104.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

105.    In New York City, residential rental units occupied as primary residences in buildings with six or more units that were built prior to January 1, 1974 and are not rent controlled are subject to the Rent Stabilization Law of 1969, Admin. Code § 26-501 *et seq* ("RSL").

106.    Pursuant to RSL § 26-517(a), all rent stabilized units were to be registered with DHCR by July 1, 1984 or within ninety days after a unit becomes subject to rent stabilization. Subsection (e) further provides: "The failure to file a proper and timely initial or annual rent registration statement shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding registration statement or if no such statements have been filed, the legal regulated rent in effect on the date that the housing accommodation became subject to the registration requirements of this section."

107.    If an owner is found to have collected an overcharge in excess of the authorized rent, the owner will be liable to the tenant for a penalty in the amount of three times the overcharge amount within the last two years. RSL § 26-516. A rent overcharge is presumed to be willful. If the owner can establish by a preponderance of the evidence that the overcharge was not willful, then the amount of the penalty will be the amount of the overcharge within the last four years plus interest. An owner found to be liable may be assessed costs and attorney's fees.

108.    Upon information and belief, Ms. Calixto's apartment has been rent stabilized pursuant to

RSL § 26-501 *et seq* for the entirety of her tenancy. The Landlord Defendants charged and collected from Ms. Calixto a rental amount that exceeded the amount permitted by the RSL.

109.    The actions of the Landlord are part of a fraudulent scheme to evade rent stabilization laws. The Landlord systematically ignores rent stabilization laws by failing to register his buildings and apartments, by failing to give tenants leases and renewal leases, and by failing to give tenants leases with the legal rent. These actions are systematic and occur across buildings and tenancies, resulting in tenants paying thousands of dollars in rent that is not properly owed.

110.    Ms. Calixto is entitled to damages in an amount to be determined at trial, plus interest, along with costs and attorney's fees. Upon information and belief, the Landlord's collection of rent in excess of the amount permitted by the RSL was willful. As a result, Ms. Calixto is also entitled to treble damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENCE *PER SE***
**(AS TO ALL DEFENDANTS)**

111.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

112.    Defendants owed Ms. Calixto a duty pursuant to the FDCPA, which is designed to protect consumers in part by prohibiting debt collectors from using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; using false, deceptive or misleading representations or means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

113.    Creditors and debt collectors in general owe debtors a duty of reasonable care in collecting their debts. *Hawkins-El v. First American Funding, LLC*, 891 F.Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd* 529 F. Appx. 45 (2d Cir. 2013).

114.    GBL § 349 also imposes on Defendants a duty to not engage in deceptive acts and unlawful practices in the conduct of their business.

115.    Defendants breached these duties, including by misrepresenting the amount Ms. Calixto owed; failing to disclose the amount Ms. Calixto had actually paid; misrepresenting that Ms. Calixto's apartment was registered with DHCR and that the rent demanded did not exceed the legal regulated rent; claiming and attempting to enforce a right to evict Ms. Calixto and obtain rent arrears with knowledge that the amount alleged had already been paid; claiming and attempting to enforce a right to evict Ms. Calixto and obtain rent arrears with knowledge that the monthly rent sought exceeded the legal regulated rent; and engaging in deceptive acts and unlawful practices by repeatedly attempting to evict and collect on debts that are not owed by tenants.

116.    As a direct and proximate result of Defendant's breach of these duties – in addition to their decision to unnecessarily continue to litigate the LT Action for more than six months – Ms. Calixto suffered compensable harm, including actual damages and emotional distress.

117.    Defendants' conduct was so flagrant as to transcend mere carelessness and constitute willful negligence or recklessness. Upon information and belief, Defendants have engaged in a pattern and practice of similar behavior against other tenants. As a result, Ms. Calixto is entitled to actual and punitive damages.

## SIXTH CLAIM FOR RELIEF
## GROSS NEGLIGENCE
## (AS TO ALL DEFENDANTS)

118.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

119.    Defendants' failure to exercise even slight care or slight diligence amounts to gross negligence. Had Defendants made even the smallest effort to review the rent records, they would have known that the amount sought in the five day notice and petition was incorrect and did not credit Ms. Calixto for rent already paid. Defendants continued to litigate the LT Action and continued to seek the full amount with full knowledge that the amount of money they were seeking was false. Moreover, had Defendants exercised even slight diligence in reviewing their court filings and the relevant building documentation, they would have known that their petition falsely alleged compliance with rent stabilization laws, when in fact the building was never registered with DHCR and there were no rent stabilized leases for the apartment. Even minimal diligence on this issue would have alerted them to the fact that they were seeking to collect an amount that was not authorized by law. Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing. Upon information and belief, Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

120.    Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Ms. Calixto isentitled to a punitive damage award.

## JURY DEMAND

121.    Plaintiff demands a trial by jury.

**PRAYER**

122.     WHEREFORE, Plaintiff requests the following relief:

a.       A declaration that Defendants have committed the violations of law alleged in this action;

c.       Actual damages, treble, exemplary, and punitive damages;

d.       Statutory damages under 15 U.S.C. § 1692k and GBL § 349;

e.       An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, GBL § 349, Judiciary Law § 487, and RSL § 26-516;

f.       Prejudgment and post judgment interest as allowed by law;

g.       An order enjoining and directing Defendants to cease violating G.B.L. § 349 *et seq.*;

h.       All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

DATED: Brooklyn, New York
          August 17, 2018

                    Respectfully submitted,

                    By: *Melissa Koven*

                    CAMBA LEGAL SERVICES, INC.
                    Melissa Koven, Of Counsel
                    Elizabeth Miller, General Counsel
                    885 Flatbush Ave.  2nd Fl.
                    Brooklyn, NY  11226
                    Phone: (718) 940-6311
                    MelissaK@camba.org

By: *Matthew Schedler*

CAMBA LEGAL SERVICES, INC.
Matthew Schedler, Of Counsel
Elizabeth Miller, General Counsel
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311
MatthewSc@camba.org

By: *Ahmad Keshavarz*

Ahmad Keshavarz
One of Plaintiffs' Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com