```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
LUISA CALIXTO,                :
                              :    18-CV-4675 (MKB)(SMG)
             Plaintiff,       :
                              :    February 1, 2019
                              :
        V.                    :    Brooklyn, New York
                              :
BALSAMO & ROSENBLATT, P.C.,   :
et al.,                       :
             Defendant.       :
------------------------------X


      TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
            BEFORE THE HONORABLE STEVEN M. GOLD
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        AHMAD KESHAVARZ, ESQ.
                          MELISSA KOVEN, ESQ.



For the Defendant:        KENNETH NOVIKOFF, ESQ.
                          WILLIAM GELLER, ESQ.

Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1    THE COURT: Good afternoon, everybody. It's
2    Judge Gold. This is Calixto v. Balsamo & Rosenblatt,
3    et al., 18-CV-4675. I have us on the record today.
4    I'd like an appearance for plaintiff, please.
5    MR. KESHAVARZ: Ahmad Keshavarz, the law
6    office of Ahmad Keshavarz, for plaintiff. Good
7    afternoon, your Honor.
8    THE COURT: Hi.
9    MR. NOVIKOFF: Good afternoon, your Honor.
10   For the law firm defendants, Ken Novikoff from Rivkin
11   Radler.
12   THE COURT: Got it.
13   MR. GELLER: Good afternoon, your Honor.
14   William Geller from Adam Leitman Bailey, P.C., on
15   behalf of the landlord defendants, that's 266 Realty NY
16   LLC, Heung Sang Tam, and Justice McAllister.
17   THE COURT: Hi.
18   MS. KOVEN: Good afternoon. This is Melissa
19   Koven from CAMDA Legal Services, also representing the
20   plaintiff, Luisa Calixto.
21   THE COURT: Got it. Anybody else? Great.
22   Obviously, there have been a couple of
23   developments since we last spoke. I see that Judge
24   Brody has scheduled a time for filing responsive
25   letters, and I expect that she will be moving forward

```
 1  in one format or another with what I think you're
 2  calling the landlord defendants' application for leave
 3  to file a Rule 12 motion.  In the meantime, I have Mr.
 4  Keshavarz's letter of January 28th seeking
 5  reconsideration.  I have a couple of questions about it
 6  for counsel for the law firm defendant, Mr. Novikoff.
 7            MR. NOVIKOFF:  Okay.
 8            THE COURT:  First of all, one of the points
 9  in the letter motion, I think, if I'm understanding it
10  correctly, has to do with the scope of the concession
11  of liability.  In other words, as I'm understanding it,
12  plaintiffs are saying that it's either unclear exactly
13  which FDCPA violations you're stipulating to have
14  committed or it is clearly limited which FDCPA
15  violations you're intending to admit.  So I tried to
16  ask -- I tried to formulate the question in a way that
17  I think is designed to answer that ambiguity and
18  resolve it.
19            Are the law firm defendants stipulating that
20  plaintiff is entitled to recover from them both
21  statutory damages and all actual damages that she is
22  able to prove or proximately cause by the conduct of
23  the law firm defendants described in her complaint?
24            MR. NOVIKOFF:  Yes, but I'll go one step
25  further, your Honor.  We have conceded that for the
```

Case 1:18-cv-04675-MKB-SMG   Document 50   Filed 02/19/19   Page 4 of 19 PageID #: 415

4

```
 1   purposes of our concession, as I set forth in the
 2   letter, that we're not going to challenge any award
 3   given for the maximum thousand-dollar statutory
 4   damages.  So they can recover any actual damages under
 5   the FDCPA that they can prove and we will stipulate to
 6   an award of $1,000.00.  We are stipulating also to a
 7   violation of 1692(e), which is a non-intent violation.
 8   1692(f) has been interpreted by some courts to require
 9   intent.  1692(e) has never been interpreted, to my
10   understanding, by any court to require intent.  In
11   fact, most of the FDCPA is an intent-free, strict
12   liability statute.
13             THE COURT:  Well, I just want to put a finer
14   point on that because I'm not as specifically aware of
15   each subdivision of the FDCPA as apparently you and
16   plaintiff's counsel are.  The concern I had after
17   reading Mr. Keshavarz's letter was that plaintiffs were
18   wondering or concerned about whether, by stipulating to
19   liability under one provision of the FDCPA but
20   declining to do so under another, you were saying,
21   well, if you can prove the actual damages -- and I'm
22   making up this hypothetical.  Well, plaintiff, to the
23   extent you can prove that actual damages were caused by
24   the fact that you were sued for rent you didn't owe,
25   you can recover it.
```

1      MR. NOVIKOFF:  Your Honor, I lost you
2 because the phone rang.
3      THE COURT:  Okay.
4      MR. KESHAVARZ:  My apologies.
5      THE COURT:  I don't mind, I'll start again.
6      MR. NOVIKOFF:  Okay.
7      THE COURT:  The concern that I may be
8 reading between the lines in plaintiff's letter is that
9 by stipulating to liability under one provision of the
10 Fair Debt Collection Practices Act but not another,
11 that you might be construed to be saying, for example,
12 if you can prove actual damages from the fact that you
13 were sued from rent you didn't owe, you can recover
14 them, but to the extent you're arguing that the manner
15 in which that litigation was conducted caused you
16 actual damages, you can't because that's sort of the
17 malice and bad faith part of the contention.
18      What I think I'm hearing you say, but I'd
19 like to repeat it to make sure it's explicit and invite
20 you to work with the plaintiffs to reduce it to a
21 written document that you're both comfortable with if
22 you'd like to, but what I think I hear you saying is
23 that to the extent there are any facts alleged in the
24 complaint that describe any activities of the law firm
25 defendants, we are prepared to stipulate that we may be

1 held accountable for any actual damages or statutory
2 damages recoverable as a result of those actions.
3       MR. NOVIKOFF: Yes. I just want to note one
4 thing. I have not really analyzed plaintiff's
5 counsel's letter all that much because I believed I had
6 another week and a half to put in my opposition papers.
7       THE COURT: Right.
8       MR. NOVIKOFF: But that being said, I think
9 I am agreeing with your Honor --
10       THE COURT: Okay.
11       MR. NOVIKOFF: -- that if they could prove
12 actual damages, whether it's emotional pain and
13 suffering or out-of-pocket expenses, based upon what my
14 clients did with regard to how they conducted
15 themselves in the litigation and/or what they may have
16 put down on paper in terms of the communication, then
17 yes, they could get a judgment for the actual damages.
18       THE COURT: And just to make it abundantly
19 clear, the reason I'm pressing you on this and the
20 reason I'm explaining my reasoning is that it may help
21 you if you want to tender a proposed stipulation. The
22 reason that I'm focusing on this is that the relief
23 you're asking for includes not allowing the plaintiffs
24 to proceed to discovery on the subject of how that
25 litigation was conducted but merely relying upon her

1  own description of what she claims she endured.
2  Therefore, you won't be making an empirical challenge
3  to that.  Your only challenge in this case is to the
4  scope of the actual damages she sustained as a result
5  of those activities.
6              MR. NOVIKOFF:  That is our position, your
7  Honor.
8              THE COURT:  Thank you.  Now that I have that
9  clarified, my next question was going to be whether
10 indeed you intended to submit opposition to the letter
11 and if so, by when.  And I infer from what you've said
12 already that you do and that you intend to do it within
13 two weeks of its having been filed.  Is that right?
14             MR. NOVIKOFF:  That is correct, your Honor.
15             THE COURT:  Thank you.
16             Mr. Keshavarz, I take it you'll want a week
17 for a reply?
18             MR. KESHAVARZ:  Yes.
19             THE COURT:  Okay, you can have it.
20             MR. NOVIKOFF:  Actually, your Honor, I'm
21 just looking at my calendar.  If I receive these on the
22 28th, if I can have -- I don't need that much longer but
23 if I could have until the 14th of February as opposed to
24 the 11th, that would work for my schedule.
25             THE COURT:  Any objection?

```
 1                  MR. KESHAVARZ:  Not from the plaintiff.
 2                  THE COURT:  All right, you can have until
 3   2/21.
 4                  MR. NOVIKOFF:  Oh, 2/21, thank you.
 5                  THE COURT:  No, you can have until 2/14.
 6                  MR. NOVIKOFF:  Right.
 7                  THE COURT:  And he'll have until 2/21.
 8                  MR. NOVIKOFF:  2/14, 2/21, yes, your Honor.
 9                  THE COURT:  Okay.  That's the problem with a
10   phone conference.  There's so much room for ambiguity.
11   That concludes my agenda for this phone call but I'm
12   happy to entertain any other matters anyone wants to
13   raise.
14                  Mr. Keshavarz or Ms. Koven?
15                  MR. KESHAVARZ:  So from the plaintiff's
16   point of view, we had raised a number of different
17   arguments in the letter based on our understanding of
18   the basis of the ruling.  I don't know if the Court is
19   going to make an adjudication on that because we have
20   until next week to file an objection to the district
21   judge for the initial conference ruling.  So I'm trying
22   to determine if -- what the scope of that is.  We
23   argued that abstention doesn't apply for -- because
24   there were no concurrent cases between state court and
25   federal court.  The state court case was dismissed
```

```
 1  before the filing of the FDCPA suit.  Abstention was
 2  one of the issues of concern in the transcript of the
 3  hearing.  There was a concern about whether there
 4  should have been a counterclaim in housing court, and
 5  we put in our letter why --
 6              THE COURT:  I read all of that.  I'm not
 7  sure I understand your question.
 8              MR. KESHAVARZ:  Sure.  I guess I was
 9  wondering -- just so I understand.  Are you saying
10  you're not going to be making a ruling on those
11  arguments until all of the briefing is done?
12              THE COURT:  That's correct.
13              MR. KESHAVARZ:  Okay, because the concern I
14  have, and I guess it's just our problem that we just
15  have to deal with, is that we've gotten I think two
16  extensions for the deadline to file an objection to the
17  December ruling, and that deadline is going to be next
18  week.
19              THE COURT:  Do you want me to enter a ruling
20  that the time to file objections to my ruling is
21  adjourned until two weeks after I rule on the motion
22  for reconsideration?
23              MR. KESHAVARZ:  I don't know if you have the
24  authority to do that but if someone did that, that
25  would help.  I don't know if that's you or the district
```

1  judge because it's a setting before the district judge
2  so the mechanics of it, I don't know.
3              THE COURT:  I'm not 100% certain either but
4  I understand the imposition on you procedurally and as
5  an advocate for a client that that puts you in, so I
6  will take -- I will undertake the responsibility either
7  to enter that order or to ask that Judge Brody do it,
8  and we'll get back to you if one or the other isn't
9  going to happen.
10             MR. KESHAVARZ:  Thank you, your Honor.
11             THE COURT:  Sure.
12             MR. KESHAVARZ:  There are -- the other
13 concern would be if the reconsideration is granted,
14 then -- well, I'm more concerned by a discovery cutoff.
15 This issue --
16             THE COURT:  I'll certainly give you more
17 time if I change the scope of discovery.  For right
18 now, the only thing that I'm allowing to be discovered
19 are plaintiff's claims for damages.
20             MR. KESHAVARZ:  Okay.  The other things are,
21 since we can't do discovery except for on actual
22 damages, there are some very basic fundamental things
23 that we need to know.  I've been conferring with
24 opposing counsel for the attorney defendants about the
25 correct name of the corporate structure for the

```
 1  attorney defendants.  The corporation on the papers
 2  filed in court, at least some of them, are under the
 3  name Balsamo & Rosenblatt, P.C.
 4            THE COURT:  That's the entity you sued,
 5  right.
 6            MR. KESHAVARZ:  However, the public filings
 7  indicate that that entity is inactive by dissolution by
 8  proclamation, so I am trying to find out what the
 9  proper entity is.  There is another entity called A.
10  Balsamo & Rosenblatt, P.C., which is not listed in any
11  document that I'd ever seen in the collections lawsuit,
12  so I don't know if their position is that -- which one
13  is the correct entity, and I just don't know and I
14  can't do discovery to find out.
15            THE COURT:  No, I didn't mean my ruling to
16  be so narrow as to preclude you from finding out things
17  that you're legitimately entitled to know even under
18  this more limited view of how the case will proceed.
19            Mr. Novikoff, is there any reason you can't
20  be of service in that regard?
21            MR. NOVIKOFF:  Absolutely not, your Honor.
22  I think me and counsel talked about this about a month
23  ago or even before our first conference and, candidly,
24  it just fell off my radar.  I'll get back with my
25  client and find out exactly what their correct name is
```

1  and I'll advise plaintiff's counsel.
2              THE COURT:  I'm sure you don't need this
3  alert but while I've limited discovery to that subject
4  matter, that doesn't mean that I'm precluding the
5  plaintiff from discovering those facts that are
6  required given the premises that you -- the stipulation
7  or concession that you've tendered on behalf of your
8  client or the ruling I've already made.  I hope that's
9  clear.
10             MR. NOVIKOFF:  Now I'm a little confused.
11             THE COURT:  I'm saying if there is something
12 that the plaintiff needs along the lines of what we've
13 just discussed --
14             MR. NOVIKOFF:  Oh, yes.
15             THE COURT:  -- that is not inconsistent with
16 the ruling limiting discovery to the damages issue,
17 then the mere fact that the plaintiff is asking it of a
18 defendant shouldn't precluded it from happening.
19 That's all I'm saying.
20             MR. NOVIKOFF:  Yes, I have that understand,
21 your Honor.
22             THE COURT:  Okay, good.
23             Anything else, Mr. Keshavarz?
24             MR. KESHAVARZ:  There are a few other items.
25 Just in terms of time frame, can I get that the next

1  week or two or when can I get that, because I need to
2  amend if that's the case, if I have the wrong entity.
3              MR. NOVIKOFF:  Yeah, but if you have the
4  wrong entity and I tell you that you have the wrong
5  entity, you can amend it in a day and I'm not fighting
6  it.  I will represent to you that I will reach out to
7  my client Monday morning to find out exactly what the
8  proper name is and as soon as I find out, I will tell
9  you.
10             MR. KESHAVARZ:  Thank you.
11             The other issue in terms of identifying all
12 the proper parties is that it's very common in
13 landlord/tenant litigation for there to be a property
14 management company that is actually directing the
15 litigation, and there's case law that that entity --
16             THE COURT:  You can serve some
17 interrogatories if you need to or you can contact
18 counsel informally for that kind of information.  If
19 they resist, you may serve interrogatories.
20             MR. KESHAVARZ:  Thank you, your Honor.
21             The third issue is about insurance.  I've
22 conferred with counsel for the attorney defendants for
23 many hours on this -- well, for a long period of time.
24 Mr. Rosenblatt, one of the personal defendants, called
25 me and told me they had insurance.  He said, I have to

```
 1  know if I have to tender this claim to my insurance
 2  carrier.  Now they're taking --
 3              MR. NOVIKOFF:  And my client advised me --
 4              MR. KESHAVARZ:  If I could finish.
 5              MR. NOVIKOFF:  -- that he did not tell you
 6  that, Ahmad, so let's not get into conversations
 7  between you and my client.
 8              MR. KESHAVARZ:  If I could finish.  I need
 9  to be able to nail that down.  I don't know of any
10  other way to do it, other than to have this person say
11  something under oath.  If I could have a twenty-minute
12  deposition of this person --
13              THE COURT:  No, no, no, you can serve an
14  interrogatory for that.
15              MR. KESHAVARZ:  Okay, because one of the
16  concerns is that there is dodging as to if they
17  subjectively believe there's coverage.  I had a case
18  where the attorney defendants' counsel -- this is not
19  to disparage but I had a case going on for more than
20  two years before the insurance policy was disclosed,
21  two years.
22              THE COURT:  It's a Rule 26(a)(1) item.  If
23  there's been no disclosure to you yet of whether the
24  defendant has insurance coverage or not, you can serve
25  an interrogatory asking for that information and the
```

```
 1  details.
 2              MR. KESHAVARZ:  Okay.
 3              MR. NOVIKOFF:  Your Honor, we already put in
 4  our Rule 26 that there's no insurance coverage.  That's
 5  what my client has advised me.  This is precisely the
 6  reason why we have stipulated to what we are
 7  stipulating.  Now this is going to be a runup of legal
 8  fees.  I mean right now, we're talking $1,000.00
 9  statutory damages and actual damages for someone who
10  admittedly has not been treated.  I doubt very much
11  that my client, even if it had insurance, would need
12  insurance to pay for the actual damages.
13              THE COURT:  Okay, but they're entitled to
14  know if there is any.
15              MR. NOVIKOFF:  Yes, absolutely.
16              THE COURT:  You say you've already -- that
17  you didn't disclose any insurance because there is
18  none.  If they propound an interrogatory that says,
19  please identify any malpractice coverage in effect at
20  the time, you can answer none.  It won't cost you very
21  much.
22              MR. NOVIKOFF:  I will answer none and if I
23  end up finding out that my client lied to me, then I
24  will withdraw as counsel and my client will have to
25  suffer the consequences fo that.
```

```
 1            THE COURT:  And if you find that your client
 2  forgot and then remembered in a sincere effort to
 3  respond, then you'll supplement your answers.
 4            MR. NOVIKOFF:  Exactly.
 5            THE COURT:  Thank you.
 6            What else, Mr. Keshavarz?
 7            THE COURT:  I had an informal conversation
 8  with the attorney for the landlord defendants and I
 9  guess there was something that was unclear about
10  whether they have to make their initial disclosures
11  even though they moved to dismiss.  Apparently, it was
12  unclear.  Most important for me is to find out what the
13  initial disclosures will say, one, about insurance, and
14  two, whether there would be a party with knowledge,
15  i.e. a property management company.
16            THE COURT:  Mr. Geller, is there any reason
17  why you shouldn't answer questions just limited to
18  insurance and the identity of the property manager at
19  this point?
20            MR. GELLER:  We talked a few minutes before
21  we called.  I would ask your Honor, considering we have
22  the motion to dismiss, to generally stay discovery, and
23  the fact that the case seems to be limited to the issue
24  of damages, to stay discovery in general with respect
25  to us.  On the other hand, I don't have a problem
```

1  answering the question about who is the property
2  manager.  I know Justice McAllister is the individual.
3  I don't know if he works for a company.  I would assume
4  there's a company but I don't think that necessarily
5  broadens things.  Frankly, I hadn't before today --
6  hadn't even thought about insurance coverage because
7  this doesn't seem to be a general sort of insurance
8  liability that would be covered by a general liability
9  policy.  But I can find out and I can certainly inform
10 plaintiff's counsel.
11             THE COURT:  So far, those are the only two
12 things you have to produce in discovery.  I don't
13 expect that there should be more discovery, except for
14 perhaps other stray items like that that plaintiffs may
15 come across that you'll have to produce.
16             MR. GELLER:  I'll be happy to work with --
17             THE COURT:  I'm not exposing you to document
18 production generally or depositions or interrogatories
19 while your motion is pending.
20             MR. GELLER:  Okay, I appreciate that.
21             THE COURT:  What else, Mr. Keshavarz?
22             MR. KESHAVARZ:  That's all I have unless my
23 co-counsel has something that I missed.
24             THE COURT:  Ms. Koven?
25             MS. KOVEN:  No, I think that's everything,

```
 1  thank you.
 2              THE COURT:  Mr. Novikoff?
 3              MR. NOVIKOFF:  No, that's it, your Honor,
 4  thank you.
 5              THE COURT:  Mr. Geller?
 6              MR. GELLER:  Nothing further from me, your
 7  Honor, thank you.
 8              THE COURT:  Okay, take care.  Look forward
 9  to hearing from you again.  Goodbye.
10              MR. KESHAVARZ:  Thank you.
11              MR. NOVIKOFF:  Thank you, your Honor.
12                       * * * * * * *
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
18        I certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23   [signature]
24
25   ELIZABETH BARRON                         February 18, 2019
```