UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
Luisa Calixto                                                        :     Index No.: 1:18-cv-04675
                                                                     :
                                        Plaintiffs,                  :          (Hon. Margo K. Brodie)
                                                                     :
                                                                     :
                     – against –                                     :
                                                                     :
                                                                     :
Balsamo & Rosenblatt, P.C.,                                          :
Robert Rosenblatt,                                                   :
Edward Hall,                                                         :
Serenay Taysin,                                                      :
266 Realty NY LLC,                                                   :
Heung Sang Tam,                                                      :
Justice McAllister, and                                             :
A. Balsamo & Rosenblatt, P.C.                                        :
                                        Defendants.                  :
------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION TO
LANDLORD DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor,
Brooklyn, NY 11241-1026
(718) 522-7900
*Co-counsel for Plaintiff Luisa Calixto*

CAMBA Legal Services
885 Flatbush Avenue, 2nd Floor,
Brooklyn, NY 11226
(718) 940-6311
*Co-counsel for Plaintiff Luisa Calixto*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 6

   I.   The Plaintiff has stated claims for violation of N.Y. Gen. Bus. Law § 349 and for negligence per se in her First Amended Complaint. ................................................. 6

      A.   GBL § 349 is read broadly to protect the public from ever-evolving deceptive practices. ...................................................................................................................... 6

      B.   There is no basis to categorically exclude tenants from the protections of GBL § 349. 8

      C.   Multiple appellate cases diverge with *Aguaiza* and it is not controlling law. .............. 9

      D.   Defendants' misconduct here is no different than any other debt collection activity that gives rise to GBL § 349 liability. ................................................................................. 11

      E.   Landlord Defendants violated their obligation under GBL § 349 to not engage in deceptive business practices. ................................................................................................. 12

   II.   The Court should exercise supplemental jurisdiction over the state law claims because the claims are factually intertwined and the state law claims have few complexities or additional facts at issue. ....................................................................................................... 12

      A.   The state law claims for GBL § 349 and negligence *per se* do not substantially predominate over the FDCPA claims. ................................................................................. 14

      B.   The GBL § 349 claim does not raise novel or complex issues of state law. .............. 22

      C.   Declining supplemental jurisdiction over Ms. Calixto's GBL § 349 claim does not promote economy, convenience, fairness or comity. .......................................................... 23

CONCLUSION ................................................................................................................ 25

## **TABLE OF AUTHORITIES**

*Cases*

*23 Realty Associates v. Teigman,* 213 A.D.2d 306 (1st Dept. 1995)............................................. 10

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ....................................................................................................................................... 19

*Aguaiza v. Vantage Properties, LLC,* 69 A.D.3d 422 (App. Div. 1st Dep't 2010) ................... 8-10

*Aguaiza v Vantage Properties, LLC*, No. 105197/08, 2009 WL 1511791 (N.Y. Sup. Ct. May 21, 2009) ....................................................................................................................................... 11

*Alkhatib v. New York Motor Grp. LLC*, No. CV-13-2337 ARR, 2015 WL 3507340 (E.D.N.Y. June 3, 2015) (M.J. Gold), *report and recommendation adopted in part,* No. 13CV2337ARRSMG, 2016 WL 5660372 (E.D.N.Y. Sept. 30, 2016) ......................................... 17

*Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 584 (S.D.N.Y. 2007) ........ 13, 24-25

*Barkley v. Olympia MortgageCo.,* 2010 WL 3709278 (E.D.N.Y. Sept. 13, 2010) ....................... 7

*Barkley v. Olympia Mortgage Co. (Barkley II )*, 557 Fed.Appx. 22 (2d Cir. 2014) .................... 23

*Brummett v. Skyline Corp.,* 38 Fed.R.Serv.2d 1443, 1444–45, 1984 WL 262559 (W.D.Ky.1984) ................................................................................................................................................... 24

*Bueno v. LR Credit 18, LLC,* 269 F. Supp. 3d 16 (E.D.N.Y. 2017) ............................................ 23

*Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Maryland,* 922 F.2d 156 (2d Cir. 1991) .............. 13

*Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015) .............................. 11-12, 19

*Cannon v. Kelly*, No. 08-CV-6297T, 2009 WL 1158695 (W.D.N.Y. Apr. 28, 2009) ................. 15

*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) ....................................... 23

*Certilman v. Becker*, 807 F. Supp. 307, 311 (S.D.N.Y. 1992) ................................................... 24

*Coakley v. Kingsbrook Jewish Med. Ctr.*, No. 16 CIV. 7009 (BMC), 2017 WL 398379 (E.D.N.Y. Jan. 30, 2017) .............................................................................................................................. 21

*Cohen v. Narragansett Bay Ins. Co.,* 14–CV–3623, 2014 WL 4701167 (E.D.N.Y. Sept. 23, 2014) (Chen, J.) ........................................................................................................................................ 23

*Collazo v. Netherland Prop. Assets LLC,* 155 A.D.3d 538, 64 N.Y.S.3d 537 (N.Y. App. Div. 2017), *leave to appeal granted*, 31 N.Y.3d 910, 106 N.E.3d 751 (2018)............................... 10-11

*Colon v. Rent-A-Center, Inc.*, 276 A.D. 2d 58, 716 N.Y.S. 65 2d 7 (App. Div. 1st Dept. 2000)... 7

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ............................................................................................... 14-15, 18

*Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, 2018 WL 2247206 (S.D.N.Y. May 16, 2018) ................................................................................................................... 21-22

*Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) ..................... 8

*Empire Merchants, LLC v. Reliable Churchill LLP*, No. 16CV5226ARRLB, 2017 WL 7512900 (E.D.N.Y. Jan. 30, 2017) ................................................................................................ 13, 24

*Frasier v. General Elec. Co.*, 930 F.2d 1004 (2d Cir. 1991) ......................................................... 6

*Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330 (1999) ......................................... 11

*Genesco Entertainment, a Division of Lymutt Industries, Inc. v. Koch*, 593 F. Supp. 743, 747 (S.D.N.Y. 1984) ................................................................................................................................ 7-8

*In re Hyman,* 502 F.3d 61, 65 (2d Cir.2007) .............................................................................. 16

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 613 F.Supp.2d 437, 442 (S.D.N.Y. 2009) ............................................................................................................................... 14

*Indep. Bankers Ass'n of New York State Inc. v. Marine Midland Bank, N.A.*, 575 F. Supp. 1425, 1430 (W.D.N.Y. 1983) ....................................................................................................................... 24

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir. 1998)....13-15, 17-18, 22, 24

*Jager v. Boston Rd. Auto Mall, Inc.,* 2015 WL 235342 at *5 (S.D.N.Y. 2015) ..................... 14, 20

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)............................................ 23

*Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999). ............................................................. 6

*Koch v. Greenberg,* 14 F.Supp.3d 247, 278–79 (S.D.N.Y. 2014) (Oetken, J.) ........................ 6, 23

*Lozano v. Grunberg,* 195 A.D.2d 308 (1st Dept. 1993) .............................................................. 10

*Makhnevich v. Bougopoulos*, No. 18-CV-285 (KAM)(VMS), 2019 WL 2994431, at *6 (E.D.N.Y. July 9, 2019), *reconsideration denied*, No. 18-CV-285 (KAM)(VMS), 2019 WL 3252748 (E.D.N.Y. July 19, 2019) ...................................................................................... 21, 24

*Marshall v. Hyundai Motor America,* 51 F.Supp. 3d 451 (S.D.N.Y. 2014)................................... 7

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015)................................... 19

*McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019)....... 11

*Midland Funding, LLC v. Giraldo,* 39 Misc.3d 936, 945, 961 N.Y.S.2d 743 (N.Y. Dist. Ct. 2013) ............................................................................................................................................................. 23

*Montoya v. Spinella & Assoc.*, 2013 WL 5203780 (D. Conn. Sept. 13, 2013) ........................... 15

*Mountz v. Global Vision Products, Inc.,* 3 Misc.3d 171 (Sup. Ct. N.Y. County 2012)................. 6

*Myerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005) .............. 10

*New York University v. Continental Insurance Company*, 87 N.Y.2d 308 (1995)........................ 8

*Ng v. HSBC Mortgage Corp.*, 2010 WL 889256 (E.D.N.Y. March 10, 2010)............................... 7

*Oney v. Assured Recovery LLC & Marine Credit Union*, No. 1:19-cv-680, 2019 WL 3346754 (E.D. Wis. July 25, 2019) ........................................................................................................... 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 86 N.Y. 2d 20 (1995)............................................................................................................................................... 7-8

*People v. Imported Quality Guard Dogs, Inc.*, 88 A.D. 3d 800 (App. Div. 2nd Dep't. 2011))....6-7

*Phillips v. 180 Bklyn Livingston, LLC,* No. 17 CIV. 325 (BMC), 2017 WL 2178430 (E.D.N.Y. May 17, 2017)............................................................................................................................... 19-20

*Pierre v. Planet Auto., Inc.,* 193 F. Supp. 3d 157, 171 (E.D.N.Y. 2016) ............................... 23-24

*Quinn v. Parkoff Operating Corp.*, 2018 N.Y. Slip Op. 50348(U), 2018 WL 1387085, at *6 (Sup. Ct. N.Y. Cty. 2018) ............................................................................................................. 10

*Ramirez v. National Cooperative Bank*, 91 A.D. 3d 204, (App. Div. 1st Dep't. 2011) ................ 7

*Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 275–76 (E.D.N.Y. 2009) ........................... 16

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir.1992) ................................. 17

*Rodriguez v. It's Just Lunch International*, 300 F.R.D. 125 (S.D.N.Y. 2014) .............................. 6

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) ............................................................................................................................ 11

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 115-116 (S.D.N.Y. 2016) ....................................................................................... 18

*Sembler v. Advanta Bank Corp.*, 2008 WL 2965661, at *3 (E.D.N.Y. Aug. 1, 2008) ............... 20

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ...........12-13, 18-19

*Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 at 55 (1999) ................................................. 9

*Sterling National Bank v. Kings Manor Estates*, 9 Misc.3d 1116 (Sup. Ct. N.Y. County 2005)... 7

*Sutton Apts. Corp. v. Bradhurst 100 Dev. LLC*, 107 A.D.3d (App. Div. 1ˢᵗ Dep't 2013) ........... 10

*Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) ................................. 19

*Tagaeva v. BNV Home Care Agency, Inc.*, No. 16CV6869RRMRLM, 2018 WL 1320661 (E.D.N.Y. Mar. 13, 2018) ............................................................................................................. 20

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966) ......................13-14, 23-24

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761-762 (9ᵗʰ Cir. 2010) ........................... 18-19

*Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167, 893 N.Y.S.2d 208, 218 (2010) ......................... 23

### Statutes

15 U.S.C. § 1692, *et. seq.* ........................................................................................................ *passim*

28 U.S.C. § 1367(c) ................................................................................................................... *passim*

N.Y. Gen. Bus. Law § 349 ........................................................................................................ *passim*

### Other Authority

Mezines, FTC Advisory Opinion, 2000 WL 425025, (Mar. 31, 2000). ........................................ 2

S. REP. 95-382, 6, 1977 U.S.C.C.A.N. 1695 ............................................................................ 20

## PRELIMINARY STATEMENT

Ms. Calixto, like at least seven other tenants of Defendants, was sued by Defendants over rental arrears she did not owe in an attempt to get her to vacate her apartment. Based on this illegal collection scheme, Ms. Calixto sued the Landlord Defendants[1] and its law firm, the Attorney Defendants.[2] Ms. Calixto has claims against the Attorney Defendants for violating the Fair Debt Collection Practices Act (FDCPA), New York's Deceptive Practices Act (GBL § 349), Judiciary Law § 487 and negligence *per se*. Ms. Calixto has claims against the landlord for violation of GBL § 349 and negligence per se. The Defendants in concert and knowingly suing Ms. Calixto and others for thousands of dollars they do not owe is the epitome of conduct the FDCPA seeks to eliminate. And Defendants inflicted serious harm on Ms. Calixto: she was terrified that she, her children, and her young grandchildren would become homeless. Because the claim is strong, the Attorney Defendants have admitted that they violated § 1692e of the FDCPA, the Act's prohibition of deceptive conduct. The Attorney Defendants have not admitted to specific allegations in the complaint or admitted to violating the state law claims. The Landlord Defendants have also not admitted to any violation and filed this Motion to Dismiss. The Motion seeks dismissal based on two theories: 1) Ms. Calixto cannot maintain a GBL § 349 claim because landlord-tenant disputes are not consumer-oriented conduct, and 2) the Court should decline to exercise supplementary jurisdiction because state law issues predominate and present complex issues of state law.

Ms. Calixto's claims are no different than any other debtor who is sued for money they do not owe and her status as a tenant does not deprive her of the protections of GBL § 349. The

---

[1] Defendants 266 Realty NY LLC, Heung Sang Tam, and Justice McAllister.
[2] Defendants Balsamo & Rosenblatt, P.C., Robert Rosenblatt, Edward Hall, Serenay Taysin, and A. Balsamo & Rosenblatt, P.C.

1

Landlord Defendants' suggestion that the law on this issue is controlling is not true and the analysis misconstrues *Aguiza v. Vantage Properties*, the case relied on for the bulk of the landlord's argument.

The Landlord Defendants' supplementary jurisdiction arguments are similarly unavailing. The FDCPA was intended to work in conjunction with state laws to provide a "full panoply of protections." Mezines, FTC Advisory Opinion, 2000 WL 425025 at * 11, (Mar. 31, 2000). The deceptive use of letters and lawsuits for debts not owed is a prototypical example of what Congress sought to provide consumers protection from with the FDCPA without foreclosing or interfering with the appropriate parallel protections of state law like GBL § 349. *See* 15 U.S.C. § 1692n. Congress' intent in enacting the FDCPA was to maximize the ability to obtain justice for harmed consumers, to eliminate wrongful conduct in the debt collection industry and ensure that debt collectors who follow the law are not "competitively disadvantaged". 15 U.S.C. § 1692(e). Generally FDCPA and GBL § 349 claims are brought together and the Court's supplemental jurisdiction is not questioned for precisely this reason. As Plaintiff will expound on, particularly with *Makhnevich*, a FDCPA claim, like nearly any federal claim, can unfortunately be used to bootstrap state law claims, but that is virtually the opposite of what is present here with a FDCPA claim that Attorney Defendants have already assumed liability for.

## STATEMENT OF FACTS

### *Ms. Calixto was sued for over $31,000 she did not owe.*

Plaintiff Luisa Calixto is a low-income, Spanish-speaker who lives in a two bedroom apartment with her family at 266 Prospect Park West, Apt. 3L, Brooklyn, NY 11215. *See* **Exhibit A** (Amended Complaint) ¶ 20 to Keshavarz Declaration (hereafter "Exhibit"). Defendant 266 Realty NY LLC is the Landlord of the apartment building (the "Building"). *Id.* ¶¶ 12, 20.

Defendant Heung Sam Tam has also claimed to be the landlord of the Building and is registered in the New York City Department of Housing Preservation & Development ("HPD") as the owner of the Building. *Id.* ¶ 14. Defendant Justice McAllister is the managing agent for the Landlord, and is registered as such in HPD. *Id.* ¶ 16.

Ms. Calixto has lived in her apartment for more than twenty years. **Exhibit A** ¶ 22. Fed up with the Landlord's refusal to make even basic repairs, in March 2017, she started to withhold her monthly rent payment of $1,075.00. *Id.* ¶ 29. On or around August 21, 2017, the Landlord, through the Attorney Defendants, sent a Five Day Notice ("the Notice") to Ms. Calixto falsely alleging that she was indebted to the Landlord in the amount of $30,100.00. *Id.* ¶ 30. On or around September 13, 2017, the Landlord, through the Attorney Defendants, filed a nonpayment proceeding against Ms. Calixto in Kings County Housing Court, falsely alleging that Ms. Calixto owed $31,175.00. *Id.* ¶ 31. While Ms. Calixto had legally withheld $7,525.00 in escrow due to the Landlord's failure to make repairs in her apartment, she immediately paid this amount on or around September 23, 2017, bringing the balance of money she owed to $0. *Id.* ¶ 33. The Landlord even provided receipts showing that she was current on her rent. *Id.* ¶ 34. Nevertheless, the Landlord proceeded with the litigation. *Id.* ¶ 35.

On or around January 31, 2018, Ms. Calixto's housing attorney sent the Attorney Defendants a letter attaching copies of Ms. Calixto's rent receipts documenting that the rent had been paid and asking that the lawsuit be discontinued. *Id.* ¶ 39, and **Exhibit B** (Letter with Receipts). On February 13, 2018, Ms. Calixto's housing attorney moved to dismiss the case based in part on the failure to credit Ms. Calixto for the money she had paid. *Id.* ¶ 43. On March 20, 2018, Defendant Serenay Taysin asked Ms. Calixto's counsel via email if they could enter into a stipulation to discontinue the case. *Id.* ¶ 45, and **Exhibit C** (Serenay Taysin Emails).

3

Despite this representation, the Attorney Defendants served an Affirmation in Opposition that same day executed by Defendant Edward Hall. **Exhibit A** ¶ 46. Defendant Serenay Taysin told Ms. Calixto's housing attorney that they were going to discontinue the action but that the Landlord wanted them to proceed with the Opposition. **Exhibit A** ¶ 47, and **Exhibit C**. On April 2, 2018, Judge Cheryl Gonzales granted Ms. Calixto's motion and dismissed the action, **Exhibit A** ¶ 49, and **Exhibit D** (Order Dismissing Housing Case).

Defendants' conduct caused Ms. Calixto extreme stress and constant worry that she and her children and her grandchildren would be evicted and become homeless. **Exhibit A** ¶ 83. Most nights, she would lie awake, thinking about what would happen if her and her family had to leave and where they would go. *Id.* She cried frequently through the duration of her court case. *Id.* Even though she knew she did not owe any money, Mr. Tam told her that he had good lawyers and she was afraid that he would still win. *Id.* ¶ 85.

***The Defendants repeatedly attempt to collect money from tenants they do not owe by filing frivolous lawsuits and issuing false rent demands.***

Defendants' practice of demanding rent not due and of filing frivolous nonpayment proceedings, both grossly misstating the amount of rent due, is the regular course of conduct for all Defendants. **Exhibit A** ¶ 51.  From 2016 to 2018, the Defendants filed 13 lawsuits against 7 other tenants.  *Id.* ¶ 57. In all 13 lawsuits, the Attorney Defendants represented the Landlord and in all instances except one Defendant Justice McAllister was the managing agent. *Id.* ¶ 55. All of these lawsuits alleged rent had not been paid for a period of more than one year, with the majority for more than a two-year period. *Id.* ¶¶ 60–77. And the lawsuits sought rent arrears ranging from $16,198 to $52,560. *Id.*

The Landlord Defendants in the present Motion attempt to characterize these instances as routine efforts to recover owed rent through non-payment proceedings. Def.'s Mot. Dismiss p. 3.

4

But the Landlord only recovered money in one of these cases, and that was only the money that Elvira Uraga owed ($9,511), not the grossly inflated amount of $29,295 sought by the Defendants. **Exhibit A**, ¶ 77. No money judgements were awarded in any of these cases. *Id.* ¶¶ 60-77. Instead the tenant would appear, challenge the landlord's claims and then the case would be discontinued without prejudice. *Id.* The landlord would then bring the case again a few months later for an even greater amount and including the same months alleged in the previous lawsuit. *Id.* Most tenants stayed and fought, but some moved out, presumably tired of the baseless lawsuits. *Id.* And the baselessness of the lawsuits is clear. *E.g. Id.* ¶ 60 (seeking rental arrears for an apartment in a building that burned down). It is implausible that a landlord would allow a tenant to stay in an apartment for years without paying rent, accumulating tens of thousands of dollars in arrears. Further, landlords who hire a lawyer, file a case, and are legitimately owed tens of thousands of dollars would not discontinue those cases without receiving any money and certainly would not do 12 different times.

> *The proceedings in this lawsuit thus far.*

Plaintiff filed this suit alleging (1) claims against the Attorney Defendants under the FDCPA, GBL § 349, and Judiciary Law § 487, and for committing negligence per se sand gross negligence; and (2) claims against the Landlord Defendants alleging rent overcharge, violation of GBL § 349, and negligence per se and gross negligence [DE 1]. On November 28, 2018, the Attorney Defendants filed an Answer [DE 27]. The Landlord Defendants originally defaulted [DE 33-35]. On May 21, 2019, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), Plaintiff voluntarily dismissed the rent overcharge and gross negligence claims [DE 66]. Attorney Defendants filed a Letter [DE 40] admitting to a violation of the FDCPA, 15 U.S.C. § 1692e. They have not admitted to specific allegations in the Complaint [DE 27 and 75]. It is unclear what facts are

actually at issue.

On June 19, 2019, there was a conference for arguments as to both Plaintiff's Rule 72 Objection and the Landlord Defendants' request for a pre-motion conference to dismiss. *See* **Exhibit E** (June 19, 2019 Hearing Transcript). Landlord Defendants served their Motion to Dismiss (**Exhibit F**) on July 19. Oddly, counsel for Attorney Defendants expressed concern at the conference that he did not "want to then lose perhaps [his] opportunity to join in on the motion" (**Exhibit E,** Trans. 41:08-10), but did not join in on the motion. Presumably Plaintiff's GBL § 349 and certainly Judiciary Law § 487 claims will go forward against the Attorney Defendants regardless of the outcome of the Landlord Defendants' motion.

## ARGUMENT

**I. The Plaintiff has stated claims for violation of N.Y. Gen. Bus. Law § 349 and for negligence per se in her First Amended Complaint.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), "the court is required to accept the material fact alleged in the complaint as true" and should not dismiss the claims "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (internal citations and quotations omitted).

      A. GBL § 349 is read broadly to protect the public from ever-evolving deceptive practices.

GBL § 349 applies "to virtually all economic activity, and [its] application has been correspondingly broad." *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999). Indeed, the statute has been applied to deceptive practices in all sorts of areas.[3]

---

[3] Including the sale of baldness products (*Mountz v. Global Vision Products, Inc.,* 3 Misc.3d 171 (Sup. Ct. N.Y. County 2012)), counterfeit wine (*Koch v.Greenberg*, 14 F.Supp.3d 247 (S.D.N.Y. 2014)), matchmaking services (*Rodriguez v. It's Just Lunch International*, 300 F.R.D. 125 (S.D.N.Y. 2014)), pet breeding (*People v. Imported*

The application of GBL § 349 to the landlord-tenant relationship was specifically addressed in its legislative history. GBL § 349-c, which provides heightened penalties for deceptive conduct directed at the elderly, provides a list of bad conduct for determining whether the supplemental penalty should be applied, including "[w]hether the defendant's conduct caused an elderly person or persons to suffer severe loss or encumbrance of a primary residence." GBL § 349-c(b)(2). The argument that deceptive landlord conduct is not covered is directly contradicted by the statutory language which makes preservation of housing an explicit purpose.

In order to state a claim under GBL § 349, an individual must demonstrate that the conduct at issue was consumer-oriented, that the defendant's act or practice is materially misleading or deceptive, and that the plaintiff was injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (Ct. of Appeals 1995). There is not a dispute as to whether the Defendants' acts were materially misleading or whether Ms. Calixto was injured as a result; the only requirement argued in Defendant's Motion to Dismiss is whether the Defendants' conduct was consumer oriented. Def.'s Mot. Dismiss pp. 6–10.

*Oswego* held that GBL § 349 applies only to deceptive conduct that is consumer oriented. *Id*. at 23-24.  In *Genesco Entertainment, a Division of Lymutt Industries, Inc. v. Koch*, 593 F. Supp. 743, 747 (S.D.N.Y. 1984), a concert promoter alleged that it had an oral contract with New York City to rent Shea Stadium for a concert, but that the City kept demanding more money and eventually cancelled the concert. The court dismissed the GBL § 349 claim because the rental of Shea Stadium was not a consumer transaction; it involved "complex arrangements,

---

*Quality Guard Dogs, Inc.*, 88 A.D. 3d 800 (App. Div. 2nd Dep't. 2011)), auto sales (*Ramirez v. National Cooperative Bank*, 91 A.D. 3d 204, (App. Div. 1st Dep't. 2011)), the sale of furniture (*Colon v. Rent-A-Center, Inc.*, 276 A.D. 2d 58, 716 N.Y.S. 65 2d 7 (App. Div. 1st Dept. 2000)), equipment leases (*Sterling National Bank v. Kings Manor Estates*, 9 Misc.3d 1116 (Sup. Ct. N.Y. County 2005)), the leasing of cars (*Marshall v. Hyundai Motor America*, 51 F.Supp. 3d 451 (S.D.N.Y. 2014)), the sale of homes (*Barkley v. Olympia MortgageCo.*, 2010 WL 3709278 (E.D.N.Y. Sept. 13, 2010)), and mortgage lending (*Ng v. HSBC Mortgage Corp.*, 2010 WL 889256 (E.D.N.Y. March 10, 2010)).

knowledgeable and experienced parties and large sums of money," which is "different in kind and degree from those that confront the average consumer." *Id* at 752.

The Court of Appeals has said that conduct was not consumer-oriented when it could never affect consumers, like the failure of an insurance company to cover $1.6 million in theft from the NYU bookstore. *New York University v. Continental Insurance Company*, 87 N.Y.2d 308 (1995).

The consumer-oriented requirement also "does not require a repetition or pattern of deceptive behavior." *Oswego*, 85 N.Y.2d at 25. Rather, "[a] claim brought under this statute must be predicated on an act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute...." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) *citing Oswego*, 86 N.Y. 2d 20. The Court of Appeals noted that this holding was consistent with the legislative intent of GBL § 349 to stop consumer frauds at their initial stages rather than waiting for more persistent frauds to develop. *Id.* at 25.

B.   There is no basis to categorically exclude tenants from the protections of GBL § 349.

The Landlord Defendants' Motion to Dismiss argues that as a matter of law, GBL § 349 does not apply to disputes between landlord and tenants. Def.'s Mot. Dismiss p. 6. Defendants' argument relies primarily on *Aguaiza v. Vantage Properties, LLC,* 69 A.D.3d 422 (App. Div. 1st Dep't 2010). But *Aguaiza* is not controlling law, does not apply to the facts here, and was incorrectly decided.

The *Aguaiza* court's ruling was based on its finding that the allegations involved private disputes between tenants and their landlords and did not constitute consumer-oriented conduct

aimed at consumers at large. *Id*. This misstates the consumer-oriented requirement. The relevant inquiry is not whether the conduct at issue involves two parties, but whether the activity has the *potential* to affect consumers more broadly.

Many consumer transactions are contracts in which an individual consumer is deceived by a seller or other contracting party, but the consumer's status as an individual does not mean GBL § 349 does not apply. *See e.g., Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 at 55 (1999) (*citing Genseco v. Koch)*. GBL § 349 is a consumer-protection statue, and consumers interact with the marketplace through individual contractual dealings.

A lease between a landlord and a tenant is no different than a lease for a car, or a contract to buy a sofa, or a mortgage contract, or any other consumer transaction. While the underlying dispute here is between a tenant and her landlord, the Landlord Defendants' deceptive conduct here is consumer-oriented because it has the potential to affect consumers more broadly. In fact, the conduct here – misrepresenting the amount of money owed – is the quintessential deceptive practice consumers might face.

C.   Multiple appellate cases diverge with *Aguaiza* and it is not controlling law.

Defendants' contention that *Aguaiza* has been "consistently followed by the New York State courts" is a misstatement of the existing case law. Def.'s Mot. Dismiss p. 8. In fact, many cases at both the trial and appellate level run counter to or distinguish *Aguiaza* and apply GBL § 349 to landlord tenant disputes. *23 Realty Assoc. v. Teigman*, 213 AD2d 306, 308 (1st Dept 1995) ("An apartment dweller is today viewed, functionally, as a consumer of housing services—as much a consumer as the purchaser of any other goods or services").

In *Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993), the court reversed the Supreme Court's dismissal of the tenant's action challenging the landlord's repeated issuance

of deceptive notices as a violation of GBL § 349.  In *Myerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005), the court held that repeated false demands that tenants were required to disclose their social security numbers was a violation of GBL § 349 and was consumer-oriented because "defendants own and manage a substantial number of rent-regulated apartments, and use the challenged forms for all lease renewals, so that the dispute is not simply a private contract dispute and generally claims involving residential units are a type of claim recognized under the statute."

While *Aguaiza* stands in contrast to these cases, it is certainly not controlling precedent standing for the idea that all landlord tenant transactions are not consumer oriented. Even the cases cited by the Landlord Defendants bear that out. *E.g. Quinn v. Parkoff Operating Corporation*, 59 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2018) ("generally [] a landlord-tenant claim may fall within General Business Law § 349"). Along the same lines, *Sutton Apts. Corp. v. Bradhurst 100 Dev. LLC*, 107 A.D.3d (App. Div. 1st Dep't 2013), another case cited with approval by Defendants is distinguishable because it involved a lawsuit between wholly corporate entities, not consumers.

The Defendant also cites *Collazo v. Netherland Prop. Assets LLC,* 155 A.D.3d 538, 64 N.Y.S.3d 537 (N.Y. App. Div. 2017), *leave to appeal granted*, 31 N.Y.3d 910, 106 N.E.3d 751 (2018) in support of its GBL §349 argument. But *Collazo* does not engage in much analysis, other than to cite *Aguaiza*. Further, notably glossed over by Landlord Defendants, the question of GBL § 349 applicability is currently pending at the Court of Appeals. The Attorney General's amicus brief for *Collazo* in support of appellant is important because the Court of Appeals has instructed courts to look at areas that the Attorney General has enforcement powers over, as those will be areas of conduct the statute will cover. **Exhibit G** (Attorney General Amicus Brief

for *Collazo*); *Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330 (1999) (in deciding whether the conduct was consumer oriented, the Court looked to the history of GBL § 349, and, specifically, the historic role of the Attorney General, and held the insurance company's deceptive marketing scheme was consumer oriented).

> **D.** <u>Defendants' misconduct here is no different than any other debt collection activity that gives rise to GBL § 349 liability.</u>

The reasoning in *Aguaiza* is narrowly focused on the landlord-tenant relationship and the lease between the parties. *Aguaiza v Vantage Properties, LLC*, No. 105197/08, 2009 WL 1511791, at *5 (N.Y. Sup. Ct. May 21, 2009) ("Between them there exists both privity of contract (i.e., the leases) and privity of estate (i.e., the leasehold interest in the rent stabilized apartment)"). But the deceptive conduct at issue here is unrelated to the terms of any lease; there is no reason to view it differently than any other deceptive debt collection practices. Landlord Defendants' wrongdoing to Ms. Calixto is about the gross misstatement of the amount due.

Attempts by creditors to collect money that was not owed or misstate the amount owed has repeatedly been found to be consumer oriented. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) (systematically collecting debts that Defendant "did not in fact have the legal right to collect that debt" was consumer-oriented); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (deceptive form debt collection letter was consumer-oriented); *Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) ("sending form collection letters" that are deceptive can be consumer-oriented as opposed to letter sent particularly to one consumer by mistake).There is no reason to deprive consumers of such protection under the law simply because the actors engaging in the deceptive acts happen to be landlords.

The Landlord Defendants' misrepresentations to Ms. Calixto are consumer-oriented

because they constitute a pattern and practice of using deceptive Five Day Notices and nonpayment Petitions that misstate the amount owed. Thus the Motion as to dismissing the GBL § 349 claims against the Landlord Defendants for failure to state a claim should be dismissed.

      E.   <u>Landlord Defendants violated their obligation under GBL § 349 to not engage in deceptive business practices.</u>

While Landlord Defendants assert in the MTD that "[v]iolation of a statute does not automatically give rise to a negligence per se claim," the only argument subsequently given is that there was no violation of GBL § 349 to serve as a basis for the negligence per se claim. Def. Mot. to Dismiss, P. 10-11. Since Landlord Defendants in fact violated GBL § 349, this argument is unpersuasive and the Motion as to dismissing the negligence per se claim against Landlord Defendants for failure to state a claim should be dismissed.

**II.   The Court should exercise supplemental jurisdiction over the state law claims because the claims are factually intertwined and the state law claims have few complexities or additional facts at issue.**

28 U.S.C. § 1367(a) codifies the authority of federal courts to exercise supplemental jurisdiction over state law claims that form part of the same case or controversy. Claims form part of the same case or controversy when they arise from a common nucleus of operative fact. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal citations omitted). At its core, this is a case about deceptive and abusive debt collection. The Attorney Defendants and Landlord Defendants, acting in concert, sought to collect a fabricated $31,000 debt from Ms. Calixto and engaged in further abusive, deceptive, and unfair conduct in the process. These facts are integral to both the FDCPA and GBL § 349 claims: they are factually intertwined, both arising from the scheme perpetuated by the Defendants. *Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Maryland,* 922 F.2d 156, 160 (2d Cir. 1991) ("The two groups of claims, one federal (based on diversity) and one nonfederal, are so tightly interwoven

that the federal claims cannot be resolved unless the federal court also addresses the nonfederal claims"); *see also Oney v. Assured Recovery LLC & Marine Credit Union*, No. 1:19-cv-680, 2019 WL 3346754, at *3–4 (E.D. Wis. July 25, 2019) ("Plaintiffs' FDCPA claim cannot be determined on its own; applicable state claims must be resolved as part of the federal claim. State claims do not substantially predominate where they are so intertwined with a federal claim.").

The FDCPA claim asserted here also has sufficient substance to confer subject matter jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). The kind of bootstrapping where supplemental jurisdiction should not be exercised is where "a party invokes a meritless federal claim as a basis of federal jurisdiction and that claim is subsequently dismissed." *Empire Merchants, LLC v. Reliable Churchill LLP*, No. 16CV5226ARRLB, 2017 WL 7512900, at *14 (E.D.N.Y. Jan. 30, 2017). In *Arista Records LLC*, the Court noted that declining supplemental jurisdiction in such cases is meant "to discourage such strategic behavior." *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 584 (S.D.N.Y. 2007). This is not what has occurred here; the GBL § 349 claim is not taking a free ride into federal court on the back of a shallow FDCPA claim. To the contrary, Plaintiff's federal claim is so strong that Attorney Defendants have already admitted liability.

Where claims form part of the same case or controversy as articulated in 28 U.S.C. § 1367(a), courts may decline to exercise supplemental jurisdiction only if the state law claim fits into one of four categories enumerated in § 1367(c). *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d at 245 *quoting Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). The Landlord Defendants' Motion to Dismiss raises two of these

exceptions, (1) and (2), as reasons to deny supplemental jurisdiction.[4] But as discussed below, the state law claims do not predominate and the GBL § 349 claim does not require the Court to resolve novel or complex issues of state law.

A.  The state law claims for GBL § 349 and negligence *per se* do not substantially predominate over the FDCPA claims.

"The 'substantially predominates' factor is a codification of the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, where the Court held that 'if it appears that the state issues substantially predominate, whether in [1] terms of proof, [2] of the scope of the issues raised, or [3] of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'" *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 613 F.Supp.2d 437, 442 (S.D.N.Y. 2009) *quoting Gibbs*, 383 U.S. at 726-27. "[T]he 'substantially predominates' standard of § 1367(c)(2) creates a 'limited exception' to the exercise of supplemental jurisdiction that should be invoked only when 'permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" *Jager v. Boston Rd. Auto Mall, Inc.,* 2015 WL 235342 at *5 (S.D.N.Y. 2015).

Just how "limited" of an exception this is can be illustrated by how common it is for FDCPA lawsuits to include the same supplemental state law claims asserted here – the same deceptive debt collection misconduct often forms the basis for both FDCPA and GBL § 349 claims. *See Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) (J. Brodie) (allegation debt collector regularly filed time barred debt collection lawsuits states a claim for violations of the FDCPA, GBL § 349, and

---

[4] Defendants do not contend the Court should decline supplemental jurisdiction under § 1367(c)(3) – (4). Therefore Plaintiff does not address those two provisions here. However, such arguments can be found in DE 54, pp. 22-24 (noting that the FDCPA claim has not been dismissed and that the 1367(c)(4) standard for "exceptional" applies to unusual circumstances like adjudication of European antitrust claims).

Judiciary Law § 487); *Cannon v. Kelly*, No. 08-CV-6297T, 2009 WL 1158695, at *2 (W.D.N.Y. Apr. 28, 2009) (GBL § 349 claim against creditor not liable under the FDCPA did not "dominate over the claims made against" the debt collector and thus "there is no reason to decline supplemental jurisdiction"); *Montoya v. Spinella & Assoc.*, 2013 WL 5203780 (D. Conn. Sept. 13, 2013) (applying *Itar-Tass* standard, rejects state law claims "substantially predominate" over FDCPA claim). The limited exception for declining supplemental jurisdiction should not be exercised here.

1.  The proof required for Ms. Calixto's FDCPA and GBL § 349 claims is nearly identical, and any additional discovery for GBL § 349 is not significant.

Landlord Defendants argue that the state law claims substantially predominate over the FDCPA claims because the only federal issue is damages under the FDCPA, whereas the state law claims would require resolution of the following facts: (1) "factual determinations of the appropriate rent that should have been assessed," (2) "whether and when the rent was paid," (3) "whether Plaintiff's rent withholding was proper," and (4) "Landlord's business practices with respect to rent collection." Def.'s Mot. Dismiss p. 14.

The scope of discovery needed to establish the state law claims is far narrower than the Landlord Defendants have portrayed. First, Attorney Defendants have not foreclosed the need for discovery as to the FDCPA claim because they have failed to stipulate to any facts. If the Attorney Defendants filed an amended answer to admit each allegation in the Complaint as to them, that would greatly narrow the factual issues. This has not occurred. If debt collectors can admit to FDCPA liability without admitting to any particular facts or intent and have state law claims dismissed as requiring greater proof, then they would seek such dismissal in practically all FDCPA cases. By definition, a state law claim would have somewhat different elements, and would almost necessarily require some additional factual determinations, even when state law

15

claims are already substantially established as they are here.

Second, the four factual determinations listed in Defendants' Motion to Dismiss are either irrelevant or would require minimal additional discovery. Both the first and third categories of discovery asserted by Landlord Defendants are not relevant to Plaintiff's GBL § 349 claim. There is no need to determine the appropriate rent that the Landlord should have charged Ms. Calixto because the state court in the collections action already determined that she owed $0, so another determination should be prohibited by collateral estoppel. *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 275–76 (E.D.N.Y. 2009) *quoting In re Hyman,* 502 F.3d 61, 65 (2d Cir.2007). Further, the relevant facts are that Defendants grossly inflated the amount due and sought to collect money from Ms. Calixto that she did not owe. Even after Ms. Calixto paid the $7,525.00 she had been withholding, the Defendants continued to litigate the case and falsely allege that $31,175.00 remained due.

And while the second and fourth categories of discovery are pertinent to GBL § 349, they are also pertinent to the FDCPA, and are already well-documented. As for whether and when the rent was paid, Ms. Calixto has already provided rent receipts. Any additional discovery (for both the FDCPA and GBL § 349 claims) might involve basic requests for documents, such as a rent ledger or payment history.

The only discovery arguably beyond the FDCPA involves the character and scope of Landlord Defendants' debt collection practices more generally.  The magnitude of any additional discovery will not be significant because it is both limited and known: Defendants have engaged in 13 similar violations and the details of these cases have already been laid out extensively in the Complaint. *Id.* ¶¶ 60-77. Most of the assertions concerning these cases are undisputable because they are based on facts derived from the court files. This issue could also be resolved

16

with basic discovery like depositions and documents including rent ledgers and payment histories.

Further, because Plaintiff alleges that Attorney Defendants and Landlord Defendants perpetrated these harms as part of a coordinated scheme (*Id.* ¶¶ 51-59), the discovery for the Landlord Defendants' debt collection practices would be substantially the same as, if not identical to, the discovery for the Attorney Defendants' debt collection practices to establish violations of the FDCPA. *Alkhatib v. New York Motor Grp. LLC*, No. CV-13-2337 ARR, 2015 WL 3507340, at *28 (E.D.N.Y. June 3, 2015) (M.J. Gold), *report and recommendation adopted in part,* No. 13CV2337ARRSMG, 2016 WL 5660372 (E.D.N.Y. Sept. 30, 2016) ("the fact that M & T Bank treated all three plaintiffs in a similar manner lends further support to the conclusion that the "consumer-oriented" prong of a Section 349 claim has been sufficiently alleged") *citing Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 53 (2d Cir.1992) (holding that evidence of defendant insurance company's similar practices in its dealings with other policyholders satisfied Section 349's consumer-oriented element).

Even if Attorney Defendants did fully stipulate to the facts that give rise to FDCPA liability and reduce the federal law issue to damages, the proper comparison would not be to cases where the federal claim has been dismissed (which is dealt with by 1367(c)(3), not (c)(2)) but to cases where the federal claim has been narrowed in scope. The *Itar-Tass* case provides the Second Circuit ruling on just that issue. *Itar-Tass*, 140 F.3d at 445-448. In *Itar-Tass*, a judgment had been obtained on the federal claims that formed original jurisdiction and yet the Second Circuit held that supplemental jurisdiction should still be exercised over the state law claims. *Id.* at 448. So even if the Attorney Defendants conceded liability under the FDCPA – which Plaintiff

contends they have failed to sufficiently do – that does not necessitate this Court declining to exercise supplemental jurisdiction.

2. The FDCPA and GBL § 349 claims have the same scope of issues because they involve the same deceptive debt collection conduct.

This Court should be guided by the analysis of the Second Circuit in *Shahriar v. Smith & Wollensky Rest. Grp., Inc.* Applying *Itar-Tass*, the Court noted that the FLSA and NYLL claims at issue "use a similar standard [...] and because each set of claims arise from the same set of operative facts, a determination as to the FLSA claims may decide the Plaintiff's NYLL claim as well." *Id.* at 246. "Although the number of claimants and amount of potential damages in the [state law] claim may have been higher... '[p]redomination under section 1367(c)(2) relates to the *type of claim* [original emphasis] and here the state law claims essentially replicate the FLSA claims – they plainly do not predominate.'" *Id.* at 246-247 *quoting Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761-762 (9th Cir. 2010).

The standard for a "deceptive" practice under GBL § 349 is all but indistinguishable from the standard of a "false, deceptive, or misleading" representation under § 1692e of the FDCPA: an objective "reasonable consumer" under GBL § 349 and an objective "least sophisticated consumer" under the FDCPA. *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 115-116 (S.D.N.Y. 2016) (collecting cases). In practice, deception under 1692e of the FDCPA amounts to deception under GBL § 349. Debt collection conduct found to be deceptive under the FDCPA is practically always deceptive under GBL § 349. *Diaz*, 2012 WL 1882976 (J. Brodie) (adopting report and recommendation that filing time-barred lawsuits is deceptive under FDCPA and GBL § 349); *Campbell*, 98 F.Supp.3d 568 (debt collector's practice of sending dunning letters with illegal processing fee was "deceptive" under FDCPA and GBL § 349); *Samms*, 163 F. Supp. 3d 109,

115-116 (finding debt collector's false representation of the availability of attorney's fees for the debt deceptive under the FDCPA and GBL § 349); *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015) ("Defendants have routinely filed allegedly fraudulent lawsuits in New York courts and obtained default judgments against various consumers"); *Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) (allegation of robo-signing thousands of affidavits of merit falsely claiming personal knowledge of key facts states a claim for violations of GBL § 349 and the FDCPA); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (filing suits without sufficient proof of debt and using false affidavits states deception claims under 1692e and GBL § 349).

These are both claims for the use of deception against consumers – they are about as similar of "type[s] of claim[s]" as are found in the law. *Shahriar*, 659 F.3d at 247 *quoting Wang*, 623 F.3d at 761-762. And like the FLSA, the FDCPA was intended to work with state consumer protection laws like GBL § 349 that are "more protective" (*Shahriar*, 659 F.3d at 247) in order to ensure the greatest protection for consumers. 15 U.S.C. § 1692n. The deceptive conduct at issue here –Defendants' attempt to collect money that was not owed and continued litigation of the case even though Defendants knew money was not owed – is deceptive under both the FDCPA and GBL § 349.

3. The GBL § 349 claim does not substantially predominate simply because it may allow for punitive damages.

In *Phillips v. 180 Bklyn Livingston, LLC*, No. 17 CIV. 325 (BMC), 2017 WL 2178430, at *2 (E.D.N.Y. May 17, 2017), this Court held that 1367(c)(2) exists to "shield federal courts from unrelated state claims that necessitate additional discovery or different legal analyses, such that the state claims overwhelm and swallow the relatively minor federal claims." In that case, a federal ADA claim, which does not provide monetary relief in its private right of action, was

brought with city and state civil rights claims for monetary damages, which the Court found to be "sidestep[ping]" Congress' intent "in not creating a private right of action for compensatory damages." *Id.* The substantial predomination there is clear: Plaintiff is seeking the compensatory relief only available under the state law claims in the federal court. Applying *Phillips*, this Court has found that where the difference between the federal law claims and state law claims "form a smaller part of the case," the state law claims do not substantially predominate. *Tagaeva v. BNV Home Care Agency, Inc.*, No. 16CV6869RRMRLM, 2018 WL 1320661, at *5 (E.D.N.Y. Mar. 13, 2018).

While GBL § 349 does create a question as to punitive damages, that is merely a different kind of compensatory relief and will not be a large part of the case. Both the FDCPA and GBL § 349 were created to provide compensatory private rights of action for consumers harmed by deceptive conduct, and further Congress' express intent for the FDCPA to work in conjunction with state laws. S. REP. 95-382, 6, 1977 U.S.C.C.A.N. 1695, 1700 ("[T]his legislation annuls only 'inconsistent' State laws, with stronger State laws not regarded as inconsistent").

4. *Dzganiya* and *Makhnevich* misconstrue the standard for 1367(c)(2) in a way that would make it a pervasive, rather than limited, exception to exercising supplemental jurisdiction.

Contrary to Landlord Defendants' claim, seemingly based on only *Sembler* and *Coakley*, this Court does not regularly decline supplemental jurisdiction on the basis of state law claims substantially predominating. *See e.g. Jager,* 2015 WL 235342 at *5 (1367(c) provisions are a "limited" exception to supplemental jurisdiction). First, in *Sembler*, while the Court cites to subsection (2), it appears that the Court declined to exercise supplemental jurisdiction under subsection (3), considering the decision does not mention the term "substantially predominate" and instead focuses on the dismissal of the FDCPA claims. *See Sembler v. Advanta Bank Corp.*, 2008 WL 2965661, at *3 (E.D.N.Y. Aug. 1, 2008). Here, the FDCPA claims have not been

dismissed, Attorney Defendants have not moved to dismiss, and Landlord Defendants have not sought to dismiss the claims against them under 1367(c)(3).

The second case is even more inapposite. In *Coakley*, the Court did not have supplemental jurisdiction (as opposed to declining to exercise it) because the Fair Labor Standards Act and New York Labor Law claims did not arise out of the same common nucleus of operative fact. *Coakley v. Kingsbrook Jewish Med. Ctr.*, No. 16 CIV. 7009 (BMC), 2017 WL 398379, at *4 (E.D.N.Y. Jan. 30, 2017). The Court's speculative holding that it "would decline" on the basis of 1367(c)(2) is dicta. Nevertheless it is persuasive because it notes that the state claims would predominate because of "the voluminous amount of discovery necessary to the resolution of the *factually distinct* state law claim [emphasis added]." *Id.* In *Coakley*, there is a set of NYLL state law claims for "wage notice violations" that did not form claims under the FLSA. *Id.* at *1. All parties to this action concede that the FDCPA and GBL § 349 claims share the same nucleus of operative fact, and the claims are factually joined rather than "factually distinct."

The two cases where courts in the Second Circuit have ruled contrary to Plaintiff's arguments here is *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, 2018 WL 2247206 (S.D.N.Y. May 16, 2018) and *Makhnevich v. Bougopoulos*, No. 18-CV-285 (KAM)(VMS), 2019 WL 2994431, at *6 (E.D.N.Y. July 9, 2019), *reconsideration denied*, No. 18-CV-285 (KAM)(VMS), 2019 WL 3252748 (E.D.N.Y. July 19, 2019) (largely tracking the reasoning of *Dzganiya*). In ruling on whether the GBL claim substantially predominated over the FDCPA claim, the Court in *Dzganiya* looked at the need to prove consumer-oriented and the availability of punitive damages under GBL § 349. *Dgazniya*, 2018 WL 2247206 at *7-11. The Court noted that evidence regarding punitive damages would not be presented if the Court did

not exercise jurisdiction over the GBL § 349 claim. *Id.* at *10. Under the *Dzganiya* interpretation, supplemental jurisdiction would be absolutely unavailable for a GBL § 349 claim brought alongside a FDCPA claim. That is contrary to the plain language of 28 U.S.C. § 1367(c)(2), to the Second Circuit case law like *Itar-Tass*, and to the purpose of the FDCPA to work in conjunction with state consumer protection laws to provide the greatest protection possible.

The GBL § 349 claim does not substantially predominate here because the facts and claims overlap and are closely intertwined and any additional discovery needed to prove the state law claims would not be extensive. Exercising supplemental jurisdiction here is consistent with the plain language of 28 U.S.C. § 1367(c)(2), case law like *Itar-Tass*, and the purpose of the FDCPA to work in conjunction with state consumer protection laws to provide the greatest protection possible.

### B. The GBL § 349 claim does not raise novel or complex issues of state law.

Landlord Defendants claim that the splits[5] in case law as to whether landlord conduct can be "consumer-oriented" and whether punitive damages are available under GBL § 349 creates complex and novel issues of state law. Def. Mot. to Dismiss, pp. 15-17. Defendants fail to cite any authority in support of its proposition that a split in case law creates a "novel or complex" issue under 1367(c)(1) and Plaintiff has not found any authority supporting that argument. To the contrary, the cases cited by Defendants are comprised entirely of federal case law, demonstrating that these issues are neither novel nor complex, and that federal courts have frequently made determinations as to whether punitive damages are available under GBL § 349 or whether GBL § 349 applies to disputes involving landlords and tenants. Def. Mot. to Dismiss, pp. 15-17.

---

[5] Notably Landlord Defendants cannot seem to decide whether the issue is split ("federal courts have conflicting rulings as to whether GBL § 349 allows a plaintiff to recover punitive damages," Def. Mot. to Dismiss, p. 15) or whether there is a "clear line of precedent" that punitive damages are unavailable (Def. Mot. to Dismiss p. 16).

Moreover, the allegation in the MTD that punitive damages for GBL § 349 "would constitute a major departure from the statutory text [and] clear legislative intent" (Def. Mot. to Dismiss, p. 16) is contradicted by the determination of state courts on the issue. *See Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167, (App. Div. 2d Dep't 2010); *Midland Funding, LLC v. Giraldo,* 39 Misc.3d 936, 945 (N.Y. Dist. Ct. 2013); *see also Bueno v. LR Credit 18, LLC,* 269 F. Supp. 3d 16, 21 (E.D.N.Y. 2017) ("The Second Circuit subsequently adopted *Wilner* in *Barkley v. Olympia Mortgage Co. (Barkley II )*, 557 Fed.Appx. 22 (2d Cir. 2014)...Consistent with this rationale, federal courts within the Second Circuit, as well as state courts, have adopted *Wilner*") *citing Cohen v. Narragansett Bay Ins. Co.,* 14–CV–3623, 2014 WL 4701167 (E.D.N.Y. Sept. 23, 2014) (Chen, J.); *Koch v. Greenberg,* 14 F.Supp.3d at 278–79 (Oetken, J.). Seeking punitive damages under GBL § 349 is neither novel nor complex.

GBL § 349 claims are frequently heard in federal courts, and the specific claim here has no unusual characteristics that would create novel or complex issues for GBL § 349 that would make a federal court ill-suited to make determinations regarding it.

C.  <u>Declining supplemental jurisdiction over Ms. Calixto's GBL § 349 claim does not promote economy, convenience, fairness or comity.</u>

While none of the discretionary categories enumerated in § 1367(c) is present, even if one of these categories did apply, the district court "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) *quoting Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). These values all weigh in favor of exercising supplemental jurisdiction.

Declining supplemental jurisdiction here would not promote economy or convenience by creating a duplicative and possibly contradictory parallel proceeding. S*ee e.g. Pierre v. Planet*

*Auto., Inc.,* 193 F. Supp. 3d 157, 171 (E.D.N.Y. 2016) *quoting Brummett v. Skyline Corp.,* 38 Fed.R.Serv.2d 1443, 1444–45, 1984 WL 262559 (W.D.Ky.1984) ("the court noted that Congress did not intend for the court to 'remand[ ] one integrally involved claim to state court, thereby creating the unfavored situation of piecemeal litigation'") [internal citation removed]. In *Makhnevich*, the only case in the Eastern District has held GBL § 349 claims substantially predominated over FDCPA claims, the Court declined to exercise supplemental jurisdiction in the context of "the state court twice deny[ing] the plaintiff's motion to stay the state court proceedings while plaintiff presented her state counterclaims here[...;] reject[ing] the federal suit as a grounds for dismissing the state court action[...; and] decid[ing] to sever the plaintiff's counterclaims, which are the same breach of contract, fraud, and GBL § 349 claims she asserted here in federal court, for a separate [state court] trial." *Makhnevich*, 2019 WL 2994431 at *6. A pending state court trial on the same state law claims is far flung from the situation here, where Ms. Calixto brings these claims for the first time and without any pending or unresolved state court proceeding.

Moreover, this case is exactly why it is imperative to consider the fourth of the *Gibbs* values: fairness. In analyzing the *Gibbs* values, the courts have looked at the burden of having to initiate state court lawsuits (*Itar-Tass*, 140 F.3d at 448, fn. 3; *Certilman v. Becker*, 807 F. Supp. 307, 311 (S.D.N.Y. 1992); *Indep. Bankers Ass'n of New York State Inc. v. Marine Midland Bank, N.A.*, 575 F. Supp. 1425, 1430 (W.D.N.Y. 1983)) and whether the federal claim has merit or was just a vehicle to get state law claims into federal court (*Empire Merchants*, 2017 WL 7512900, at *14; *Arista Records*, 532 F. Supp. 2d 556), among others.

The burden of initiating another case in state court would be significant for Ms. Calixto, particularly because she has such little income and children and grandchildren who depend on

her, including a developmentally disabled son. Bringing a second case in state court will necessarily require time and money. And while GBL § 349 provides for attorney's fees, they are only discretionary  the claim standing apart from a FDCPA claim would be unlikely to solicit counsel willing to represent her on affordable terms. Defendants have repeated, as if it were so simple, that Plaintiff can refile her state law claims if dismissed, but the likely result of the federal court declining to exercise jurisdiction over the state law claims in this case (and certainly one the Defendants have a vested interest in having happen) is that the claims will likely not be brought at all. The federal courts should decline supplemental jurisdiction when state law issues are unfairly brought into the federal court through unsubstantiated federal claims, not when Defendants engage in "strategic behavior" (*Arista Records,* 532 F. Supp. 2d at 584) with a vague stipulation to an undisputed FDCPA claim in order to, once again, deny Ms. Calixto justice.

## **CONCLUSION**

Plaintiff respectfully requests that the Landlord Defendants' Motion to Dismiss be dismissed in full.

DATED: Brooklyn, New York
        August 30, 2019

Respectfully submitted,

By: *Melissa Koven* and *Matthew Schedler*

CAMBA LEGAL SERVICES, INC.
Melissa Koven, Of Counsel
Matthew Schedler, Of Counsel
Elizabeth Miller, General Counsel
885 Flatbush Ave.  2nd Fl.
Brooklyn, NY  11226
Phone: (718) 940-6311
MelissaK@camba.org

By: *Ahmad Keshavarz* and *Emma Caterine*

Ahmad Keshavarz
Emma Caterine
Plaintiff's Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
ahmad@NewYorkConsumerAttorney.com